# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Dana, individually and      :
derivatively on behalf of the Lofts at  :
1234 Condominium Association,     :
              Appellant      :
                               :
          v.                 :  No. 978 C.D. 2018
                               :  ARGUED: November 14, 2019
Lofts at 1234 Condominium      :
Association, Thomas Marrone, and  :
Echo Volla                  :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: March 12, 2020

      Jason Dana appeals from the June 6, 2018 Order of the Court of Common Pleas of Philadelphia County (Trial Court) granting the Motion for Partial Summary Judgment filed by Thomas Marrone and Echo Volla.[1]  For the reasons that follow, we affirm the Trial Court's Order.

## **Background**

      This appeal arises from a long-standing and contentious dispute among condominium owners in a three-story building known as The Lofts at 1234 Condominium (The Lofts), located at 1234 Hamilton Street in Philadelphia, Pennsylvania.  The Lofts consists of 17 condominium units and a garage with 17

---

[1] The Lofts at 1234 Condominium Association (Association) is also an Appellee in this matter.  However, due to its failure to comply with this Court's briefing deadline, we precluded the Association from filing a brief and participating in oral argument by Order dated November 16, 2018.

parking spaces. The Association was created on November 15, 2005 by the recording of the Declaration of The Lofts (Declaration) by The Lofts' declarant, 1234 Hamilton, L.P. (Declarant). Leonidas Addimando was Declarant's managing partner and his company, Alterra Property Group (Alterra), was the property manager for The Lofts until mid-2015.

The Association adopted its By-Laws in 2005. Declarant recorded a First Amendment to the Declaration with the City of Philadelphia Department of Records (Department of Records) on October 30, 2006. The First Amendment subdivided The Lofts' garage into 17 individual parking spaces. Declarant adopted the First Amendment pursuant to Section 3.4 of the Declaration, wherein Declarant had reserved the right to subdivide the garage.

Declarant executed a Revised and Restated Declaration on December 22, 2006 and recorded it with the Department of Records on February 6, 2007. The Revised and Restated Declaration reflected the First Amendment's subdivision of the garage and removed the language in Section 3.4 of the Declaration that gave Declarant the ability to subdivide the garage.

Mr. Dana purchased unit 102 and parking space P09 of The Lofts on February 1, 2007.[2] Mr. Dana purchased his unit and parking space from Declarant, and Mr. Addimando executed the deeds.

Declarant ceded control of the Association to its three-member Executive Board in 2011. Declarant sold the last unit it owned to Ronald P. Cooley in July 2013.

On September 24, 2013, Ms. Volla and Mr. Cooley were elected to the Association's Executive Board. On January 28, 2015, Mr. Marrone was appointed

---

[2] Mr. Dana resides in Connecticut and leases his condominium unit in The Lofts.

to serve as the third member of the Executive Board and as the Association's President. Mr. Marrone and Ms. Volla served on the Executive Board until September 2017. As of this writing, Mr. Cooley is still a member of the Executive Board.

On April 10, 2015, Mr. Marrone executed a Second Amendment to the Declaration (Roof Deck Amendment) and recorded it with the Department of Records on April 15, 2015. The Roof Deck Amendment gave third-floor unit owners (including Mr. Marrone and Ms. Volla) the right to build decks above their units on The Lofts' roof. The roof is a common element belonging to all unit owners. The Roof Deck Amendment classified any constructed roof deck as a limited common element allocated to the unit that built it.

On May 5, 2015, Mr. Marrone executed a Third Amendment to the Declaration (Parking Space Amendment) and recorded it with the City of Philadelphia Commissioner of Records on May 15, 2015. The Parking Space Amendment lengthened parking spaces P10 through P17 (including those owned by Mr. Marrone and Ms. Volla) by conveying common elements of the garage to them. The Parking Space Amendment also conveyed a four-foot-wide strip of parking space P13 as an egress walkway (Walkway) between parking space P13 (belonging to Mr. Marrone) and parking space P12 (belonging to Mr. Cooley).

The Roof Deck and Parking Space Amendments, which were recorded in 2015, stated that they were "previously approved by the unanimous vote of all of the Unit Owners at a meeting of the Unit Owners at which a quorum was present at all times." Reproduced Record (R.R.) at 264a, 292a. The Executive Board informed the Association's members that the votes authorizing these Amendments took place eight years earlier, in January 2007.

3

On February 24, 2017, Mr. Dana filed a Complaint, both individually and derivatively on behalf of the Association, against Mr. Marrone, Ms. Volla, and the Association (collectively, Defendants) in the Trial Court. In his Complaint, Mr. Dana asserted claims for intentional violations of the Pennsylvania Uniform Condominium Act, 68 Pa. C.S. §§ 3101-3414 (PUCA), breach of fiduciary duty, declaratory relief, and equitable relief.[3] Specifically, Mr. Dana alleged that:

- Mr. Marrone and Ms. Volla improperly conveyed certain common elements of The Lofts to themselves;

- Mr. Marrone and Ms. Volla improperly amended the Association's rules to prohibit the short-term leasing of individual units;

- Mr. Marrone and Ms. Volla caused the Association to file a lawsuit against the developer of a neighboring property without the Association members' prior approval;

- Mr. Marrone and Ms. Volla borrowed $283,372 in the Association's name, without a vote of the Association's members, to make repairs to The Lofts; however, many of the repairs were limited to common elements allocated to Mr. Marrone's and Ms. Volla's units; and

- The Association received $180,000 in insurance proceeds for damage to an elevator that was a limited common element allocated to Mr. Marrone's unit and gave the insurance proceeds to Mr. Marrone.

The case proceeded through several rounds of preliminary objections and amended complaints before the filing of Mr. Dana's Fourth Amended Complaint on

---

[3] In 2016, Mr. Cooley, a member of the Association's Executive Board, also filed an action against Defendants, captioned *Cooley v. Lofts at 1234 Condominium Association*, asserting similar claims. The instant case was consolidated with *Cooley* at the Trial Court level. However, on February 22, 2019, this Court denied the parties' Joint Application to Consolidate Appeals.

4

August 8, 2017. In his Fourth Amended Complaint, Mr. Dana asserted the following causes of action:

- Count I: individual and derivative claims against Mr. Marrone and Ms. Volla for intentional violations of PUCA;[4]

- Count II: derivative claim for breach of fiduciary duty against Mr. Marrone and Ms. Volla;

- Count III: individual and derivative claims for declaratory judgment and other equitable relief against all Defendants;

- Counts IV and V: individual and derivative claims for fraud against Mr. Marrone; and

- Count VI: individual and derivative claims for civil conspiracy against Mr. Marrone and Ms. Volla.

---

[4] Derivative actions involving *incorporated* condominium associations are governed by the law relating to shareholder derivative actions. *See* 68 Pa. C.S. § 3108 (stating that "[t]he principles of law and equity, including the law of corporations and unincorporated associations . . . supplement the provisions of this subpart"). Our Court has explained the distinction between an individual suit and a derivative suit in this context as follows:

> *An action is derivative if the gravamen of the complaint is injury to the corporation or its members as a whole.* In effect, the suing shareholder claims to be acting on behalf of the corporation, because the directors and management have failed to exercise their authority for the benefit of the company and all of its shareholders.

*Patterson v. Shelton* (Pa. Cmwlth., No. 2396 C.D. 2011, filed March 6, 2013), slip op. at 8 (internal citation omitted) (emphasis added). When an injury to a corporation results in injury to its shareholders, the injury "is regarded as 'indirect,' and insufficient to give rise to a direct cause of action by the stockholder," requiring that a "derivative action" be filed on behalf of the corporation. *Burdon v. Erskine*, 401 A.2d 369, 370 (Pa. Super. 1979) (*en banc*).

5

In the Fourth Amended Complaint, Mr. Dana added the causes of action for fraud and civil conspiracy in Counts IV through VI.[5]

On August 8, 2017, Defendants filed Preliminary Objections to the Fourth Amended Complaint. On August 9, 2017, Mr. Dana filed an Objection to Discovery Master's Recommendation to Stay Discovery, to which Mr. Marrone filed a Response and a Cross-Motion for a Protective Order. The Trial Court heard oral argument on these motions on September 5, 2017.

On September 6, 2017, the Trial Court entered an Order staying discovery pending the disposition of Defendants' Preliminary Objections to the Fourth Amended Complaint in this action and Plaintiff's Motion for Partial Summary Judgment in the consolidated *Cooley* action, *see supra* note 3, which involved similar claims against Defendants. Trial Ct. Order, 9/6/17, at 1. The Trial Court also granted Mr. Marrone's Cross-Motion for a Protective Order and ordered Mr. Dana to "refrain from accusations of misconduct, criminal, and quasi[-]criminal conduct in public filings without protection." *Id.* at 2.

On October 5, 2017, the Trial Court sustained Defendants' Preliminary Objections to the Fourth Amended Complaint in part by dismissing Mr. Dana's individual claims in Count I (intentional violations of PUCA) for lack of standing. The Trial Court also dismissed portions of Mr. Dana's individual and derivative claims in Counts I, II, III, V, and VI as time-barred. In its October 5, 2017 Order, the Trial Court explained its reasoning as follows:

> Since [Mr. Dana] did not file preliminary objections to [Defendants']
> preliminary objection raising statute of limitations, the objection has
> been waived and the court may address the issue of statute of limitations

---

[5] The Fourth Amended Complaint was the operative complaint at the time of the Trial Court's June 6, 2018 Order, from which Mr. Dana now appeals.

at this time. The Declaration states in [S]ection 7.2 that "no action to challenge the validity of an amendment adopted by the Association pursuant to this section may be brought more than one year after the amendment is recorded." Here[,] the [Roof Deck] and [Parking Space] Amendments were recorded April 15, 2015 and May 15, 2015, respectively. [Mr. Dana] instituted this action in February 2017. Since [Mr. Dana] filed []his complaint more than one year after the [Roof Deck and Parking Space Amendments] were filed[,] and since "no action" challenging the [Roof Deck and Parking Space A]mendments one year after the [recording of such Amendments] w[as] filed, any causes of action challenging the validity of the [Roof Deck] and [Parking Space] Amendments are time[-]barred.

Trial Ct. Order, 10/5/17, at 2 n.1 (internal citation omitted). The Trial Court also found that Mr. Dana did not have standing, in his individual capacity, to sue members of the Executive Board for violations of PUCA because "Executive Board [m]embers owe a fiduciary duty . . . to the Association[,] not [to] the unit [owners]." *Id.* at 2 n.2.

On December 11, 2017, Mr. Marrone and Ms. Volla filed a Motion for Judgment on the Pleadings, which the Association joined on January 4, 2018. On January 29, 2018, the Trial Court granted the Motion for Judgment on the Pleadings and dismissed Count III (declaratory judgment and other equitable relief) of the Fourth Amended Complaint in its entirety.[6]

On April 5, 2018, the Trial Court issued two Orders disposing of the parties' Motions for Partial Summary Judgment, which were filed in January 2018. In the first Order, the Trial Court denied Mr. Dana's Motion for Partial Summary Judgment, concluding as follows:

[Mr. Dana's] [P]artial [M]otion for [S]ummary [J]udgment asks this court to declare void the following purported conveyances: 1) the right

---

[6] Count III (declaratory judgment and other equitable relief) was the only cause of action Mr. Dana asserted against the Association.

7

to build roof decks to the third-floor units of [The Lofts], 2) common elements in the parking garage of [The Lofts] to parking spaces P10-P17, and 3) parking space P13 of the common elements designated in the [2007] Declaration . . . as an approximately [four-foot-]wide strip of space being between parking spaces P12 and P13 (a.k.a. the Walkway). These claims have already been dismissed by [O]rder of the court dated October 5, 2017 as barred by the statute of limitations .
. . .

Trial Ct. Order, 4/5/18, at 1 n.1. In its second Order, the Trial Court granted Mr. Marrone's and Ms. Volla's Motion for Partial Summary Judgment, dismissed all of Mr. Dana's derivative claims in the Fourth Amended Complaint, and denied Mr. Dana's alternative request to bring his derivative claims as trustee *ad litem* for the Association.

On January 19, 2018, Mr. Marrone and Ms. Volla filed another Motion for Partial Summary Judgment. On June 6, 2018, the Trial Court dismissed Mr. Dana's remaining individual claims in Counts IV (fraud) and V (fraud) of the Fourth Amended Complaint for lack of standing.[7] The Trial Court also dismissed Count VI (civil conspiracy) for lack of an underlying tort to support a conspiracy claim.

In dismissing Mr. Dana's individual fraud claims, the Trial Court concluded:

In [C]ount IV, [Mr.] Dana alleges that . . . [Mr.] Marrone represented to the Association that the former [Executive] Board was responsible for the failure to address "the obvious repair and maintenance matters" and not Alterra, a company owned by [Mr.] Addimando, wh[ich] was contractually charged with repairing and maintaining the real property at [T]he Lofts. According to [Mr.] Dana, [Mr.] Marrone refused to bring the claim against Alterra because he was acting as [Mr.] Addimando's lawyer or seeking [Mr.] Addimando as a client. [Mr.] Dana alleges that as result of [Mr.] Marrone's conduct, he suffered individually by being forced to pay extravagant special assessments that would have been reduced if [Mr.] Marrone

---

[7] The Trial Court had already dismissed Mr. Dana's derivative claims brought on behalf of the Association, including those alleging fraud, in its April 5, 2018 Order.

would have pursued the case against Alterra. *Having to pay extravagant special assessments does not constitute individual harm to [Mr.] Dana because all [of] the Association members would be assessed in the same manner as [Mr.] Dana. . . .*

Similarly, [C]ount V fails to allege any individual harm suffered by [Mr.] Dana. Count V alleges that [Mr.] Marrone engaged in fraudulent and deceptive conduct when he conveyed common elements to himself. *Notwithstanding the fact that this claim was already dismissed as barred by the statute of limitations, failure to access common elements is not individual harm to [Mr.] Dana but harm to the Association.*

Trial Ct. Op., 6/6/18, at 4 (footnotes omitted) (emphasis added). The Trial Court also rejected Mr. Dana's claims of individual harm in his response to the Motion for Partial Summary Judgment, "includ[ing] loss of a mortgage refinance fee, increased mortgage interest, [and] lost rent income," because he did not allege that such damages resulted from "the fraud alleged[ly committed] [by Mr. Marrone] in [C]ounts IV and V." *Id.* at 4 n.14. Finally, the Trial Court dismissed Mr. Dana's civil conspiracy claim, stating that because "the remaining claims of fraud in [C]ounts IV and V have been dismissed, the count for conspiracy has no legal basis." *Id.* at 5.[8]

On July 2, 2018, Mr. Dana timely appealed from the Trial Court's June 6, 2018 Order.

## Issues

1.    Did Mr. Dana preserve any issues for appeal other than those resolved by the Trial Court's June 6, 2018 Order?

---

[8] In its June 6, 2018 Opinion, the Trial Court also adopted and incorporated its prior rulings in this matter and in the consolidated *Cooley* case. Trial Ct. Op., 6/6/18, at 3 n.7.

2.      Did the Trial Court err in concluding that Mr. Dana lacked standing to bring individual claims against the Association's Executive Board members for their alleged violations of PUCA?

3.      Did the Trial Court err in granting summary judgment without additional discovery because the Association's status as an unincorporated association was established by the record before the Trial Court?

4.      Did Mr. Dana lack authority to bring derivative claims on behalf of the Association as trustee *ad litem*, where the Association did not consent to a derivative lawsuit?

5.      Did the Trial Court err in concluding that the one-year statute of limitations in the Declaration precluded Mr. Dana's challenges to the Roof Deck and Parking Space Amendments?

6.      Did the Trial Court err in dismissing Mr. Dana's common law tort claims as time-barred and not subject to the two-year statute of limitations in Section 5524 of the Judicial Code, 42 Pa. C.S. § 5524?

7.      Did the Trial Court err in dismissing Mr. Dana's claim for civil conspiracy after having dismissed the underlying fraud claims?

8.      Did the Trial Court abuse its discretion in ordering Mr. Dana to refrain from improper accusations of misconduct and criminal and quasi-criminal conduct in public filings and in striking certain portions of his court filings?

## Applicable Standards of Review

### 1. Preliminary Objections

This Court's review of an order sustaining preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. *Factor v. Goode*, 612 A.2d 591, 592-93 (Pa. Cmwlth. 1992). In ruling on

10

preliminary objections in the nature of a demurrer, the trial court must accept as true all well-pled facts and inferences that may be reasonably deduced therefrom. *Id.* at 593. The trial court should sustain a demurrer only in cases that are clear and free from doubt. *Id.*

## 2. Judgment on the Pleadings

In reviewing an order granting judgment on the pleadings, this Court's review is limited to determining whether the trial court committed an error of law or abused its discretion. *E-Z Parks, Inc. v. Phila. Parking Auth.*, 532 A.2d 1272, 1275 (Pa. Cmwlth. 1987). A motion for judgment on the pleadings is in the nature of a demurrer, in which the opposing party's well-pled allegations are viewed as true, but only those facts specifically admitted by the objecting party may be considered against him. *Id.* The trial court may grant a motion for judgment on the pleadings only if there are no material facts at issue and the law is so clear that a trial would be a fruitless exercise. *Id.*

## 3. Summary Judgment

This Court's review of an order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Pickering v. Sacavage*, 642 A.2d 555, 558 (Pa. Cmwlth. 1994). The trial court should grant summary judgment only in a clear case, and the moving party has the burden of demonstrating that no material issues of fact exist. *Id.* The trial court must view the record in the light most favorable to the non-moving party. *Id.*

## Analysis

### 1. Waiver

Preliminarily, Mr. Marrone and Ms. Volla assert that Mr. Dana has waived any issues other than those specifically addressed in the Trial Court's June 6, 2018

Order because that was the only Order identified in and attached to Mr. Dana's Notice of Appeal. In its June 6, 2018 Order, the Trial Court dismissed Mr. Dana's individual fraud claims against Mr. Marrone because Mr. Dana did not allege any individual harm and therefore lacked standing. The Trial Court also dismissed Mr. Dana's civil conspiracy claim against Mr. Marrone and Ms. Volla because it could not be sustained absent the underlying fraud claims. Therefore, Mr. Marrone and Ms. Volla assert that this Court's review should be limited to those issues. We disagree.

The Trial Court's June 6, 2018 Order was a final order and, as such, Mr. Dana's appeal from that order necessarily encompassed all prior non-final orders. Our Supreme Court has held that "a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment." *K.H. v. J.R.*, 826 A.2d 863, 871 (Pa. 2003). Moreover, in its June 6, 2018 Opinion, the Trial Court adopted and incorporated all of its prior rulings in this matter and in the consolidated *Cooley* case. Trial Ct. Op., 6/6/18, at 3 n.7. Therefore, we conclude that Mr. Dana has not waived his claims relating to the Trial Court's prior non-final orders.

### 2. Individual PUCA Claims

First, Mr. Dana argues that the Trial Court erred in dismissing his individual claims against Mr. Marrone and Ms. Volla for intentional violations of PUCA because he lacked standing to sue the individual Executive Board members. Section 3412 of PUCA states that if any person "violates any provision of this subpart or any provision of the declaration or bylaws, *any person* or class of persons adversely affected by the violation has a claim for appropriate relief." 68 Pa. C.S. § 3412 (emphasis added). In his Fourth Amended Complaint, Mr. Dana averred that Mr.

12

Marrone and Ms. Volla knowingly violated PUCA by acting in bad faith and in breach of their fiduciary duties to the Association. Fourth Am. Compl. ¶¶ 239-41.

The Trial Court dismissed these claims, finding that "[w]hile a unit owner may have individual standing to bring claims against the Association or the [Declarant]" under PUCA, Mr. Dana lacked standing to sue individual members of the Executive Board for violations of PUCA, because the "Executive Board [m]embers owe a fiduciary duty . . . to the Association[,]" not to the individual unit owners. Trial Ct. Order, 10/5/17, at 2 n.2; *see* 68 Pa. C.S. § 3303(a) ("In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation *to the association* . . . .") (emphasis added); R.R. at 90a (Section 14.1(a) of the Declaration states that "the officers and members of the Executive Board shall stand in a fiduciary relation *to the Association* and shall perform their duties . . . in good faith, . . . [and] in the best interests *of the Association*") (emphasis added). Section 3311 of PUCA permits an individual unit owner to bring a tort or contract cause of action *against a condominium association* for damages caused by "a wrong done by the association or by an agent or employee of the association." 68 Pa. C.S. § 3311(a)(2)(i), (a)(4). This section, however, does not authorize an individual unit owner to file claims *against the board members* of an association.[9]

---

[9] Section 14.3 of the Declaration of The Lofts provides that Executive Board members may be subject to personal liability in limited circumstances, as follows:

> No Executive Board member or officer, in his capacity as such, shall be personally liable for monetary damages for any action taken, or any failure to take any action, *unless he has breached or failed to perform the duties of his office under the standards described above.*

13

Mr. Dana cites several cases that he believes stand for the proposition that PUCA allows unit owners to sue association board members, even when the alleged harm is suffered by the condominium association. *See* Mr. Dana's Br. at 26 (citing *Lyman v. Boonin*, 635 A.2d 1029 (Pa. 1993); *Falini v. Brinton Square Condo. Ass'n* (Pa. Cmwlth., No. 676 C.D. 2015, filed Feb. 1, 2016); and *McLafferty v. Council for Ass'n of Owners of Condo. No. One, Inc.*, 148 A.3d 802 (Pa. Super. 2016)). However, these cases do not support Mr. Dana's contention that he has individual standing to sue Mr. Marrone and Ms. Volla for violations of PUCA, as they are all distinguishable from this case.

In *Lyman*, the unit owners filed an action against a condominium association and its board members that pre-dated, and was not governed by, PUCA, and the issue of the unit owners' standing to sue the board members was not raised.[10] *Falini* was an action by a unit owner against a condominium association and its executive board for property damage to her individual unit. However, unlike the Declaration in this case, the condominium declaration in *Falini* expressly permitted individual tort actions against the executive board members, stating that "board members can be held *personally liable 'in tort to a [u]nit [o]wner . . .* for the . . . [b]oard members' own willful misconduct or gross negligence in the performance of their duties.'"

---

R.R. at 95a (emphasis added). However, it appears that in such circumstances, any liability for monetary damages would be to the Association, to which the Board members' duties are owed. *See id.* at 94a (stating that "the officers and members of the Executive Board shall stand in a fiduciary relation to the Association and shall perform their duties . . . in good faith, . . . [and] in the best interests of the Association"). Nothing in the Declaration expressly permits a Board member to be held personally liable in tort to *an individual unit owner or member* of the Association, nor does Mr. Dana make such a claim here.

[10] *See Twp. of Bristol v. 1 Enters., LLC*, 177 A.3d 1045, 1051 (Pa. Cmwlth. 2018) (stating that "[l]ack of standing is not a jurisdictional defect" and the issue of standing "must be raised at the earliest opportunity and [is] waived if not promptly raised").

14

*Falini*, slip op. at 6 (quoting declaration) (emphasis added). Finally, in *McLafferty*, the issue of the unit owners' standing to sue executive board members under PUCA was not raised. Therefore, we are unpersuaded by Mr. Dana's argument that these cases establish that he has standing to sue the Executive Board members for violations of PUCA.

Furthermore, in support of his PUCA cause of action, Mr. Dana did not allege damages unique to him that were not derivative of those sustained by the Association as a whole. It is well settled that

> under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for "a harm [that is] peculiar to the corporation and [that is] only . . . indirectly injurious to [the] shareholder." *Reifsnyder v. Pgh. Outdoor Adver. Co.*, 405 Pa. 142, 173 A.2d 319, 321 (1961). Rather, such a claim belongs to, and is an asset of, the corporation.
>
> *To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation*—and the shareholder must be entitled to receive the benefit of any recovery.

*Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. 2014) (emphasis added).

In Count I of the Fourth Amended Complaint (intentional violations of PUCA) against Mr. Marrone and Ms. Volla, Mr. Dana averred generally that he was "adversely affected and damaged" by Mr. Marrone's and Ms. Volla's actions, without specifying *how* he was individually harmed. Count I merely contains broad averments regarding Mr. Marrone's and Ms. Volla's alleged misappropriation of Association dues and insurance proceeds and imposition of special assessments on the Association's members, *see* Fourth Am. Compl. ¶¶ 237, 242, damages which would have been sustained by the entire Association. *See Kehr Packages, Inc. v.*

15

*Fidelity Bank, Nat'l Ass'n*, 710 A.2d 1169, 1176 (Pa. Super. 1998) ("[W]here the gravamen of a claim is injury to a corporation, the shareholders of the corporation may not claim injury to themselves rather than the corporation."); *see also Hill*, 85 A.3d at 550 (dismissing a shareholder's individual claims against an executive board member, where the shareholder "never alleged that [the board member] breached a contractual or fiduciary duty *owed to [the shareholder] individually*") (emphasis added).

Therefore, we conclude that the Trial Court properly dismissed Mr. Dana's PUCA claims against Mr. Marrone and Ms. Volla, individually, for lack of standing.

### 3. Derivative Claims on Behalf of the Association

Mr. Dana next asserts that the Trial Court erred in dismissing his derivative claims brought on behalf of the Association for violations of PUCA, breach of fiduciary duty, declaratory judgment, equitable relief, fraud, and civil conspiracy. As Mr. Dana acknowledges in his appellate brief, *see* Mr. Dana's Br. at 22, 30, he may bring derivative claims on behalf of the Association in one of two ways: (1) if the Association is determined to be a nonprofit corporation, he seeks to bring derivative claims pursuant to Section 5781 of the Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa. C.S. § 5781; or (2) if the Association is determined to be an unincorporated association, he seeks to bring derivative claims as trustee *ad litem* for the Association under Pa. R.C.P. No. 2152. We will address each argument in turn.

### a. Derivative Claims Under the Nonprofit Law

First, Mr. Dana asserts that the Association is a nonprofit corporation and, as such, his derivative claims were brought on the Association's behalf under Section 5781 of the Nonprofit Law, which provides in relevant part:

16

> [A] plaintiff may maintain a derivative action to enforce a right of a nonprofit corporation only if[] . . . the plaintiff first makes a demand on the corporation or the board of directors, requesting that it cause the corporation to bring an action to enforce the right, and[] . . . the corporation does not bring the action within a reasonable time.

15 Pa. C.S. § 5781(a)(1)(i). Further, each plaintiff seeking to bring a derivative claim "must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains." *Id.* § 5782(a).

Mr. Dana argues that although the Association was originally organized as an unincorporated association in 2005, Articles of Incorporation were subsequently filed in 2012. Mr. Dana contends that the filing of Articles of Incorporation conclusively establishes that the Association was operating as a nonprofit corporation governed by the Nonprofit Law.[11] We disagree.

The Trial Court ruled on this issue in its January 16, 2018 Opinion in the consolidated *Cooley* case, wherein Mr. Cooley, an Executive Board member, filed similar claims against Defendants. In that Opinion, the Trial Court concluded that Mr. Cooley (and thus Mr. Dana) lacked standing to bring their derivative claims because the evidence established that the Association was an unincorporated association, not a nonprofit corporation.[12] This conclusion was based on the Trial Court's review of the Association's By-Laws, the Articles of Incorporation for the nonprofit entity named "Lofts at 1234 Condominium Association," meeting minutes

---

[11] Articles of Dissolution were filed on behalf on the nonprofit entity named "Lofts at 1234 Condominium Association" on August 4, 2017 while this matter was pending in the Trial Court. *See* R.R. at 588a.

[12] While the Federal Rules of Civil Procedure specifically allow derivative actions by members of unincorporated associations, *see* Fed. R. Civ. P. 23.1(a), the Pennsylvania Rules of Civil Procedure do not. As discussed above, Mr. Dana concedes that if the Association is unincorporated, he may only bring derivative claims on its behalf as trustee *ad litem* under Pa. R.C.P. No. 2152.

17

reflecting that Declarant ceded control of The Lofts to the Association, and applicable law. In particular, the Trial Court cited Section 5331 of the Nonprofit Law, which states:

> In the case of the incorporation as a nonprofit corporation under this subpart of an unincorporated association, *the articles of incorporation shall contain*, in addition to the provisions required in Subchapter A (relating to incorporation generally), *a statement that the incorporators constitute a majority of the members of the committee authorized to incorporate the association by the requisite vote required by the organic law of the association for the amendment of the organic law*.

15 Pa. C.S. § 5331 (emphasis added).

At the time the Articles of Incorporation were filed in 2012, Declarant had ceded control of The Lofts to the Association, so a vote by the unit owners to incorporate the Association was required under Section 5331 of the Nonprofit Law. However, "[t]he Articles of Incorporation show a strike[-]through in the section requesting if a vote occurred." *Cooley* Trial Ct. Op., 1/16/18, at 9 n.8; *see* R.R. at 188a. This evidence establishes that, at the time the Articles were filed, the Association's members did not vote to convert the Association's legal status to a nonprofit corporation.

Furthermore, the Trial Court found no other record evidence that the Association ever voted to convert its legal status to a nonprofit corporation. The Trial Court therefore concluded that the Association is still operating as an unincorporated association and that, "[a]t best, the [A]rticles of [I]ncorporation created a separate entity with the same name of the Association with the intent to covert the unincorporated association to a nonprofit corporation in the future." *Cooley* Trial Ct. Op., 1/16/18, at 9.

Contrary to Mr. Dana's assertion, the Trial Court was not required to accept the filing of Articles of Incorporation alone as conclusive evidence that the Association is incorporated, particularly where the Articles of Incorporation themselves "show a strike[-]through in the section requesting if a[n Association] vote occurred" to officially convert the Association's legal status. Trial Ct. Op., 1/16/18, at 9 n.8; *see* R.R. at 188a. The Association's By-Laws, which are attached to Mr. Dana's Fourth Amended Complaint, also expressly state that the Association is organized "as an unincorporated association." R.R. at 104a. We conclude that the Trial Court correctly determined, based on the evidence of record, that the Association is unincorporated and, as such, Mr. Dana lacked standing to file a derivative suit on its behalf.

Next, Mr. Dana argues that the Trial Court erred in dismissing his derivative claims before the close of discovery, as summary judgment may be granted only "after the completion of discovery relevant to the motion." Pa. R.C.P. No. 1035.2(2). Mr. Dana claims that the Trial Court precluded him from conducting full discovery and presenting additional evidence demonstrating the Association's status as a nonprofit corporation. We disagree.

Rule 1035.2(2) did not require the Trial Court to wait until the completion of *all* discovery to grant summary judgment on the issue of the Association's legal status – that is, whether the Association is an unincorporated association or a nonprofit corporation. As explained above, the Trial Court had more than sufficient evidence before it to rule on summary judgment. Most notably on this point, the Trial Court issued a rule to show cause and held an evidentiary hearing to allow Mr. Dana and Mr. Cooley to establish why they believed the Association is a nonprofit corporation. However, although the hearing had been rescheduled a few times, Mr.

19

Dana still did not appear, despite being subpoenaed to do so. Notes of Testimony (N.T.), 12/14/17, at 27-28, 32. At the outset of the hearing, Mr. Dana's counsel protested the petition being heard as procedurally improper, *see id.* at 6-8, but then went on to present argument on the merits. No testimony was taken, and the attorneys for both sides presented argument to the Trial Court regarding the Association's legal status and whether Mr. Dana was permitted to bring derivative claims on the Association's behalf.[13] In any event, Mr. Dana failed to identify what additional evidence could have been adduced to establish a change in the Association's legal status, given the extensive evidence already of record at the time of the Trial Court's ruling. *See, e.g.,* N.T., 9/5/17, at 58 (Mr. Marrone's counsel stated on the record that "about 20,000 pages of documents between both sides have been exchanged" during discovery at that point).[14]

Accordingly, we conclude the Trial Court correctly determined that Mr. Dana lacked standing to bring derivative claims on the Association's behalf under the Nonprofit Law.

### b. Derivative Claims as Trustee *Ad Litem*

In the alternative, Mr. Dana argues that if the Association is determined to be unincorporated, as Defendants contend, he was permitted to file his derivative claims

---

[13] In their appellate brief, Mr. Marrone and Ms. Volla aver that Mr. Dana and Mr. Cooley "have challenged [the Trial Court's] authority throughout this case, most recently by Motion for Recusal[, which was] denied on August 3, 2018." Appellees' Br. at 31 n.15; *see* R.R. at 3085a.

[14] In his reply brief filed with this Court, Mr. Dana states that "the deposition of the filer of the Articles of Incorporation, Jeffrey Pustizzi [(then-counsel for Mr. Addimando)], is an obvious discovery step that should have been taken before the [T]rial [C]ourt's decision." Mr. Dana's Reply Br. at 10-11. Notably, at the September 5, 2017 hearing before the Trial Court, when asked about the status of discovery, Mr. Dana's counsel replied, "We would need to complete the deposition of Mr. Marrone . . . and [Mr. Dana] would probably need to depose one more person from the [A]ssociation. Then I think that would be the end of our discovery." N.T., 9/5/17, at 57.

as trustee *ad litem* of the Association under Pennsylvania Rule of Civil Procedure 2152, which provides:

> An action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association. *An action so prosecuted shall be entitled "X Association by A and B, Trustees ad Litem" against the party defendant.*

Pa. R.C.P. No. 2152 (emphasis added). However, Mr. Dana's Fourth Amended Complaint does not conform to the requirements of Rule 2152, as it does not identify Mr. Dana as a trustee *ad litem* of the Association in the caption or elsewhere in the Complaint.[15] In his appellate brief, Mr. Dana merely asserts that he was entitled to bring his derivative claims as trustee *ad litem* of the Association because he is a member of the Association. We disagree.

In its January 16, 2018 Opinion in the consolidated *Cooley* case, the Trial Court determined that "[w]hile it is sufficient for [Mr.] Cooley [(and thus Mr. Dana)] to allege in the complaints filed that he is bringing an action on behalf of the Association as trustee *ad litem* to overcome preliminary objections, at th[e] [summary judgment stage] of the litigation, relying solely upon the pleadings is not enough." *Cooley* Trial Ct. Op., 1/16/18, at 10; *see Nicastro v. Cuyler*, 467 A.2d 1218, 1220 (Pa. Cmwlth. 1983) (stating that when a motion for summary judgment is filed, the responding party "may not rely solely on allegations [in] his pleadings, but must submit supplemental materials which establish a genuine issue of material fact"); *see also Highway Truck Drivers & Helpers, Local 107 v. Cohen*, 172 A.2d

---

[15] The only reference to *ad litem* status in the Fourth Amended Complaint is the following averment: "Alternatively, to the extent that the Articles of Incorporation discussed herein are found to be invalid and the Association is found to be an unincorporated association, as the Defendants contend, [Mr. Dana] moves to bring this action individually and as trustee ad litem of the Association." Fourth Am. Compl. ¶ 12.

21

824, 827 (Pa. 1961) (holding that members of an unincorporated association, who filed a complaint as trustees *ad litem* of the association, need not allege in the body of their complaint the authority conferred upon them by the association to bring an action as trustees *ad litem*; rather, the question of the members' authority to act as trustees *ad litem* is an issue to be resolved by the trier of fact).

The Trial Court properly found, based on the evidence adduced during discovery, that Mr. Dana "did not have the authority to bring the action as trustee *ad litem* on behalf of the Association" because the record showed that "[t]he Association members overwhelmingly rejected the proposal[] to . . . file or ratify [Mr.] [Dana's] lawsuit against [Mr.] Marrone, [Ms.] Volla[,] and the Association." *Cooley* Trial Ct. Op., 1/16/18, at 10. The Trial Court explained:

> [A] special meeting was held on November 17, 2016 and the unit owners were provided with two ballots. . . . The second ballot posed two questions: a) should the Executive Board of the Association conduct an immediate, independent investigation of the allegations against [Mr.] Marrone and [Ms.] Volla . . . ? and b) should the [Executive] Board commence suit against [Mr.] Marrone and [Ms.] Volla on behalf of the Association for self-dealing conduct, breaches of fiduciary duty, and violations of [PUCA]? After a vote, the ballot questions were rejected by the unit [owners].

*Id.* at 7.

Mr. Dana also contends that the Nonprofit Law permits an individual to file a derivative suit where the nonprofit corporation rejects a demand to sue. *See* 15 Pa. C.S. § 5781(a)(1)(i) (a derivative suit is properly maintained if a demand is made and "the corporation does not bring the action within a reasonable time"). However, as discussed in Section 3 of this Analysis, *supra*, we conclude that the Association is not a corporation governed by the Nonprofit Law, but an unincorporated association. In any event, the Articles of Incorporation filed in 2012 explicitly stated

22

that the nonprofit entity "shall have no members." R.R. at 187a; *see* 15 Pa. C.S. § 5306(a)(7) (stating that the articles of incorporation for the nonprofit corporation shall include a statement indicating "[i]f the corporation is to have no members"); *id.* § 5751(b) (setting forth procedures applicable to "[c]orporations without voting members"). Thus, even if the Association's legal status had been converted to a nonprofit corporation by the filing of the Articles of Incorporation, Mr. Dana's derivative claims would still fail because, by the plain language of the Articles, he is not a "member" of that corporation. *See* 15 Pa. C.S. § 5782(a) (requiring that a plaintiff in a derivative suit be "a member of the corporation at the time of the transaction of which he complains").

Accordingly, we conclude that the Trial Court properly dismissed all of Mr. Dana's derivative claims brought on the Association's behalf.

### 4. Challenges to the Roof Deck and Parking Space Amendments

Mr. Dana asserts that the Trial Court erred in dismissing all claims challenging the validity of the Roof Deck and Parking Space Amendments to the Declaration as time-barred. The Trial Court concluded that such claims were barred by the one-year statute of limitations in Section 7.2 of the Declaration, which states that "[n]o action to challenge the validity of an amendment adopted by the Association pursuant to this [s]ection may be brought more than one year after the amendment is recorded." R.R. at 79a. Section 3219(b) of PUCA likewise states: "No action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded." 68 Pa. C.S. § 3219(b).

Mr. Dana argues, however, that for the statute of limitations to apply, the Association must have *properly adopted* the Amendments, as Section 3219(b) of

PUCA requires that the Amendments be "adopted by the association pursuant to this section." *Id.* Section 3219(a)(1) of PUCA provides:

> The declaration, including the plats and plans, may be amended *only by vote or agreement of unit owners of units to which at least*:
>
> (i) *sixty-seven percent of the votes in the association are allocated*;
>
> (ii) any larger majority the declaration specifies; or
>
> (iii) a smaller number as specified in the declaration if all of the units are restricted exclusively to nonresidential use.

68 Pa. C.S. § 3219(a)(1) (emphasis added).

Mr. Dana asserts that there was no Association in existence at the time of the adoption of the Roof Deck and Parking Space Amendments, despite the statements contained in both Amendments that they were "approved by the unanimous vote of all of the [u]nit [o]wners at a meeting of the [u]nit [o]wners at which a quorum was present at all times." R.R. at 264a, 292a. The votes authorizing the Amendments allegedly occurred at a January 18, 2007 meeting attended only by Mr. Addimando and Sean Snyder, one of the original unit owners in The Lofts.[16] In the Fourth Amended Complaint, Mr. Dana averred that Mr. Marrone and Ms. Volla relied on meeting minutes that they knew were fabricated and that Mr. Marrone fabricated a certificate with the intent to mislead the Association's members. Fourth Am. Compl. ¶¶ 311-315, 319. Mr. Dana contends that because the Roof Deck and Parking Space

---

[16] Units 304 and 305 were conveyed to Mr. Snyder on November 16, 2005. In his Fourth Amended Complaint, Mr. Dana averred that "[d]espite the representation in the [January 18, 2007] [m]eeting [m]inutes that [Mr.] Addimando and [Mr.] Snyder were the only unit owners" at that time, five other units were conveyed to other individuals before January 18, 2007. Fourth Am. Compl. ¶¶ 47-50.

24

Amendments were fraudulently adopted, they are effectively void *ab initio*, and, thus, his claims are not subject to the one-year limitations period.

In response, Mr. Marrone and Ms. Volla assert that as of January 18, 2007, Declarant was still 1234 Hamilton, L.P., and the Association was governed by Mr. Addimando, Declarant's representative. They contend that at that time, Mr. Addimando had the right to make decisions concerning the sale, classification, and usage of certain portions of The Lofts, including common areas, that were not addressed in the original Declaration. According to Mr. Marrone and Ms. Volla, the 2007 votes were not memorialized until 2015 because there were no Executive Board meetings until Mr. Marrone joined the Executive Board in 2015; shortly thereafter, the Executive Board adopted the Roof Deck and Parking Space Amendments to conform with Declarant's prior decisions.

Regardless of how the Roof Deck and Parking Space Amendments came to exist, it is evident that Mr. Dana is challenging the *validity* of those Amendments. Mr. Dana cites no binding authority to support his claim that PUCA's statute of limitations can be circumvented by alleging that an amendment to a declaration was the product of fraud or otherwise procedurally invalid. Neither the Declaration nor PUCA limits the one-year statute of limitations to certain types of actions, nor do they make an exception for claims alleging fraud. Rather, the statute of limitations language unambiguously states that "*[n]o action to challenge the validity of an amendment*" may be filed beyond the one-year period. 68 Pa. C.S. § 3219(b) (emphasis added); R.R. at 79a.[17]

---

[17] Mr. Dana also contends that the conveyances contained in the Roof Deck and Parking Space Amendments are void under Section 3318(b) of PUCA, which states that "[a]ny purported conveyance . . . of *common elements*, unless made pursuant to this section, is *void*." 68 Pa. C.S. § 3318(b) (emphasis added). This assertion, however, still does not overcome the statute of

25

We recognize that this Court has permitted the late filing of an action challenging the validity of an amendment to a declaration under PUCA's sister legislation, the Uniform Planned Community Act (UPCA), 68 Pa. C.S. §§ 5101-5414.[18]  In *Belleville v. David Cutler Group*, 118 A.3d 1184, 1194 (Pa. Cmwlth. 2015), we held that Section 5219(b) of the UPCA, setting forth a one-year statute of limitations for actions challenging validity of an amendment adopted by a homeowners' association, did not apply to the homeowners' declaratory judgment action asserting that purported amendments to the declaration were invalidly adopted.  The homeowners challenged the first amendment to the declaration five years after its recording, when the association used the amendment to justify imposing a higher assessment on the homeowners.  *Id.* at 1190-91.  Until that time, the homeowners had no knowledge of the amendment or its recording.  *Id.* The homeowners sought a declaration that the amendment was "null and void" because it was "recorded without notice to any [home]owner within the [d]evelopment and without consent" as required by the UPCA.  *Id.* at 1191.

Notably, the statute of limitations provisions in the UPCA and PUCA are virtually identical.  *Compare* 68 Pa. C.S. § 5219(b) *with* 68 Pa. C.S. § 3219(b).  In holding that the homeowners' action was not time-barred under the UPCA, we stated:

---

limitations issue.  Whether Mr. Dana claims that the Amendments are void because they were fraudulently adopted and recorded, or whether he claims that the conveyances within the Amendments are void, he is still fundamentally challenging the *validity* of the Amendments.  Hence, these claims are subject to PUCA's one-year statute of limitations.

[18] The UPCA governs homeowners' associations in townhome and other planned communities, while PUCA governs only condominium associations.  PUCA was enacted after the UPCA but was modeled after the UPCA.

26

> Under the [a]ssociation's interpretation of Section 5219 of the UPCA, the executive board of the [a]ssociation could unilaterally make any amendment it chooses—regardless of how large or material a change—without notice to or vote by the [a]ssociation members, so long as the board declares the amendment to be a technical correction under Section 5219(f) of the UPCA. Furthermore, under the [a]ssociation's interpretation, pursuant to Section 5219(b) of the UPCA, *[a]ssociation members would have no form of recourse unless they somehow discover, without the benefit of any notice or vote, that an amendment has been recorded and bring an action within one year of the recording of that amendment. This is the exact type of absurd result the General Assembly is presumed not to intend.* Furthermore, it would frustrate the purpose of Section 5219(a) [of the UPCA], which is to ensure that a majority of association members are aware of and agree to material changes in the documents which govern the rights, responsibilities, obligations, and powers of the association, its members, and its Board.

*Belleville*, 118 A.3d at 1194 (emphasis added).

*Belleville*, however, is factually distinguishable from this case. Unlike the homeowners in *Belleville*, Mr. Dana did not allege that he was unaware of the adoption and recording of the Roof Deck and Parking Space Amendments in 2015, nor did he allege that he learned of the Amendments' recording beyond the one-year limitations period. Mr. Dana merely alleged that Mr. Marrone and Ms. Volla adopted the Amendments in 2015 without a vote or authorization by the Association's members. Fourth Am. Compl. ¶¶ 107, 239(b), 248. In fact, the record shows that Mr. Dana and Mr. Cooley discussed the filing of their lawsuits and actively sought legal advice during the one-year limitations period. *See* R.R. at 1161a-71a.[19] This is not a situation where the unit owner did not discover that an

---

[19] For example, in an email to Mr. Cooley on March 1, 2016, Mr. Dana stated: "I spoke with my attorney briefly this evening. This is a pretty interesting situation. It's not a legal opinion yet, but we probably can and should sue Tom [Marrone] and Echo [Volla] personally. We also need them removed from the board." R.R. at 1161a. On April 21, 2016, in a lengthy e-mail exchange, Mr. Dana and Mr. Cooley specifically discussed the Parking Space Amendment, with

amendment was recorded until after the statute of limitations expired, leaving him or her with no other recourse. As such, the policy considerations that led the *Belleville* Court to permit the homeowners' untimely challenge to the procedural validity of an amendment are simply not present in this case.

In his Fourth Amended Complaint, Mr. Dana averred that the Roof Deck Amendment was recorded on April 15, 2015 and the Parking Space Amendment was recorded on May 15, 2015. Fourth Am. Compl. ¶¶ 83, 100. Mr. Dana did not file

---

Mr. Cooley referring to it as "the illegal [T]hird [A]mendment." *Id*. at 1170a. Mr. Cooley also discussed with Mr. Dana "the [January 2007] fake meeting between Leo [Addimando] and Sean [Snyder]," stating, "I don't think you'll ever prove that meeting didn't happen." *Id.* at 1171a. On April 23, 2016, Mr. Dana wrote to Mr. Cooley:

> I for one don't blame you for suing the [A]ssociation. In fact, I encourage it if the attorney thinks it's the appropriate target. Tom [Marrone] should be deposed, but half of the owners are lazy and stupid. When he gets spanked in court and the board's reckless behavior costs us all more[] money, maybe people will listen and act. And it will be a first, and legally validated, step toward what I think is a case for breach of fiduciary responsibility if we want to pursue [it].

*Id.* at 1168a. Later that day, Mr. Dana wrote to Mr. Cooley, "Maybe Tom [Marrone] really is the best person to sue for the [parking] space, since it was 100[%] self[-]dealing." *Id.* at 1167a. Mr. Cooley replied:

> On the parking spot issue alone, we could have a breach of duty count against Marrone himself – self[-]dealing. Marrone did the repainting [of parking spots] all on his own. It was never really a board action. . . . Marrone said he didn't need a board vote because he was simply following through on the intentions of the developer. A judge would laugh at that pile of bullshit. . . .
>
> While Echo [Volla] would have voted with Marrone, she was in France at the time and there was no proxy vote in her place on the board. She was still in France when she sent the email to all of us two weeks later containing the [Parking Space A]mendment. . . .

*Id.*

this action until February 2017, almost two years after the Amendments were recorded, despite his apparent knowledge of the Amendments within the statute of limitations period. As noted earlier, the one-year statute of limitations for challenges to the validity of an amendment is not limited to certain types of actions. Once unit owners become aware of what they believe are invalid amendments to a declaration, they cannot sit idle and allow a potential cause of action to linger indefinitely. Therefore, we agree with the Trial Court that all of Mr. Dana's claims challenging the validity of the Roof Deck and Parking Space Amendments are barred by the one-year statute of limitations.

### 5. Common Law Tort Claims

Mr. Dana also argues that the Trial Court erred in dismissing his common law tort claims in Count II (breach of fiduciary duty), Count V (fraud), and Count VI (civil conspiracy) as time-barred.[20] Mr. Dana argues that his claims relating to Mr. Marrone's and Ms. Volla's fraudulent and deceptive conduct were governed by the two-year statute of limitations in Section 5524 of the Judicial Code, 42 Pa. C.S. § 5524,[21] rather than PUCA's one-year statute of limitations. Thus, he contends that his common law tort claims were timely filed.

---

[20] The Trial Court also dismissed Mr. Dana's individual fraud claims in Counts IV and V for lack of standing, because Mr. Dana failed to allege individual harm that was distinct from the harm allegedly suffered by all members of the Association. *See* Trial Ct. Op., 6/6/18, at 4. On appeal, Mr. Dana does not challenge the Trial Court's dismissal of Count IV (fraud), relating to Mr. Marrone's alleged self-dealing and false representations to the Association stemming from his "secret" relationship with Mr. Addimando. *See* Mr. Dana's Br. at 26; Fourth Am. Compl. ¶¶ 283-97.

[21] Section 5524(7) of the Judicial Code provides a two-year limitations period for "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct . . . , including deceit or fraud." 42 Pa. C.S. § 5524(7).

In support of this assertion, Mr. Dana relies on *Pontiere v. James Dinert, Inc.*, 627 A.2d 1204, 1208 (Pa. Super. 1993). In *Pontiere*, the Pennsylvania Superior Court held that condominium purchasers' claims arising under PUCA's general warranty provisions were barred by the one-year statute of limitations. However, the Superior Court held that the purchasers were separately entitled to relief under the doctrine of implied warranty of habitability, which, due to the latency of the structural defects in their units, provided the purchasers a longer limitations period in which to file their claims. In doing so, the Court noted that PUCA was "meant only to supplement [the] purchasers' remedies otherwise available under general law." *Id.* Therefore, the Superior Court allowed the purchasers' common law claims to proceed.

We conclude that Mr. Dana's reliance on *Pontiere* is misplaced. In *Pontiere*, the purchasers had a common law claim for breach of implied warranty, arising from their contracts with the condominium builder, that was separate from their claim under PUCA for structural defects to their units. *Pontiere* also did not involve a challenge to the validity an amendment to a declaration under PUCA. In this case, Mr. Dana cannot establish the elements of his common law claims for breach of fiduciary duty, fraud, and civil conspiracy without first establishing that the Roof Deck and Parking Space Amendments were procedurally invalid, as he contends that Mr. Marrone and Ms. Volla relied on what they knew were "fabricated" meeting minutes and a certificate in adopting both Amendments. *See* Fourth Am. Compl. ¶¶ 61-79. Thus, it is evident from the allegations in the Fourth Amended Complaint that these common law tort claims, regardless of their nomenclature, stem directly from his allegations challenging the *validity* of the Roof Deck and Parking Space Amendments. *See id.* ¶¶ 248-56, 299-319, 321-25. As discussed in Section 4 of this

30

Analysis, *supra*, Section 7.2 of the Declaration and Section 3912(b) of PUCA require that any challenges to the validity of the Amendments must be filed within one year of the Amendments' recording. Therefore, we conclude that the Trial Court properly dismissed Mr. Dana's common law tort claims as barred by the one-year statute of limitations.

### 6. Civil Conspiracy Claim

Mr. Dana argues that because the Trial Court erroneously dismissed his fraud claims, it also erred in dismissing his civil conspiracy claim. We disagree. Our Court has recognized that "[n]o civil cause of action for conspiracy can exist unless the conduct that was the subject of the conspiracy is actionable." *Morley v. Farnese*, 178 A.3d 910, 919 (Pa. Cmwlth.), *appeal denied*, 190 A.3d 1131 (Pa. 2018). In other words, "'[a]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'" *Id.* at 920 (citation omitted). Therefore, because the Trial Court properly dismissed Mr. Dana's underlying fraud claims, his civil conspiracy claim based on the fraud allegations fails.

### 7. Misconduct Accusations

In its September 6, 2017 Order, the Trial Court struck certain portions of Mr. Dana's filings and ordered that Mr. Dana "refrain from accusations of misconduct, criminal, and quasi[-]criminal conduct in public filings without protection." Trial Ct. Order, 9/6/17, at 2. Mr. Dana contends that this prohibition was unconstitutionally vague because the Trial Court did not explain the meaning of "misconduct" or what type of "protection" Mr. Dana was required to place over his court filings to avoid violating the Order. He further contends that the Order was an unconstitutional prior restraint because it prohibited Mr. Dana from engaging in free speech before the speech even occurred. We disagree.

Mr. Dana cites no authority to support his contention that the Trial Court's Order was unconstitutionally vague and violated his First Amendment rights. Moreover, when a party moves for a protective order, as Mr. Marrone did here, the Trial Court "may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense." Pa. R.C.P. No. 4012(a). "Whether to grant or deny the motion [for a protective order], and what kind . . . of protective order[] to issue[,] are matters that lie within the sound judicial discretion of the [Trial C]ourt." *Allegheny W. Civic Council, Inc. v. City Council*, 484 A.2d 863, 866 (Pa. Cmwlth. 1984). A reviewing court may not overturn such an order absent an abuse of discretion. *Id.*

We conclude, based on our review of the record, that the Trial Court properly struck certain portions of Mr. Dana's filings and issued the admonition in its September 6, 2017 Order. The Trial Court found that Mr. Dana, among other things, had repeatedly lodged false accusations of criminal conduct against Mr. Marrone and Ms. Volla, and particularly Mr. Marrone, over the course of this litigation.[22] We

---

[22] At the September 5, 2017 hearing, the Trial Court stated:

These are extreme measures that I'm taking unfortunately because I have to. Anyone who reads over [Mr. Marrone's] deposition [transcript] will come to . . . the eventual conclusion that this is warfare; this is not litigation. And that line between discovery and a physical fist fight is razor thin.

And I hope that somebody in this room, particularly counsel for the parties, understands that this . . . is inappropriate behavior, that this is so out of hand as to be almost ridiculous. I have never had to do this in 26 years as a judge. I haven't had to do anything close to this in 26 years as a judge. And the fact that I have to do it is to me very unfortunate.

. . . .

conclude that the Trial Court did not abuse its discretion in granting the protective order.

## **Conclusion**

Accordingly, we affirm the Trial Court's Order.

 

 

 

 

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

. . . [A]t some point [the] Court has to step in to provide oversight and issue rulings as necessary to prevent abuse. The plaintiff may have the greatest case in the world. I don't know if you do or don't. Your client may have been completely unjustifiably treated. And we're going to find that out. But this behavior just has to stop. . . .

N.T., 9/5/17, at 65-67.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Dana, individually and :
derivatively on behalf of the Lofts at :
1234 Condominium Association, :
     Appellant :
       :
   v.     : No. 978 C.D. 2018
       :
Lofts at 1234 Condominium :
Association, Thomas Marrone, and :
Echo Volla :

## **O R D E R**

AND NOW, this 12th day of March, 2020, the Order of the Court of Common Pleas of Philadelphia County, entered June 6, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge