627 A.2d 1204

**Allan PONTIERE, et al.**

v.

**JAMES DINERT, INC., South Hills Heating and Air Conditioning Co., Inc.**

**Appeal of JAMES DINERT, INC.**

Superior Court of Pennsylvania.

Argued May 12, 1993.

Filed July 8, 1993.

Michael F. Fives, Pittsburgh, for appellant.

Henry E. Rea, Jr., Pittsburgh, for Pontiere, appellee.

Before: McEWEN, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order entered against James Dinert, the general contractor and seller of a multiple-unit condominium complex near Pittsburgh. Plaintiffs, some 52 original purchasers ["Buyers"] of the individual condominiums, contended below that their furnaces were constructed in a defective manner and that Dinert is liable for the cost of the repairs under the implied warranty of habitability and workmanlike construction. The Honorable Stanton R. Wettick heard the Buyers' cause without a jury, awarded judgment in their favor, and denied Dinert's post-trial motions. This timely appeal followed.

Buyers purchased their condominium units from Dinert between 1984 and 1988. In January, 1991, however, two Buyers experienced problems with fumes emanating from their furnaces. The complex's property manager investigated the problem and contacted Equitable Gas Company ["Equita-

ble"] to diagnose the situation. Equitable "red-tagged" the furnaces because they had insufficient access to "combustible air." The manager called a repair company, whose engineer, John Conley, confirmed Equitable's conclusion that the ventilation in the individual furnace rooms was inadequate. The crux of the problem was that the furnaces were enclosed in small rooms whose only access to outside air was through a chimney vent. According to Conley, this violated the National Fuel Gas Code [the "Code"], which requires individual furnace rooms to have access to outside air through two vents. As a result, Dinert made an offer to all residents of the complex including Buyers to alleviate the problem by installing a grill to provide a source for combustible air. Buyers, however, hired Conley to bring the furnace rooms into compliance with the Code, contending that the grilling was an insufficient remedy under the Code in effect at the time their systems were repaired.

Judge Wettick found that the furnaces were not constructed in compliance with the accepted standards of the Code. He therefore found Dinert liable to Buyers under the statutory warranty provision of Pennsylvania's version of the Uniform Condominium Act ["UCA"], 68 Pa.C.S.A. § 3411, which protects purchasers of condominiums against "structural defects" in newly purchased units.[1] He thus awarded each Buyer the fair market value of the cost to bring the furnaces into compliance with the applicable regulations. Dinert presents four claims on appeal: (1) Buyers waived all warranties other than a limited two-year warranty, including the implied warranty of habitability, by entering into their contract with Dinert; (2) insufficient evidence supported the trial court's finding that any warranties were breached; (3) the court

1. Although Buyers did not plead the statutory warranty theory in their complaint, they were not required to. Pennsylvania is a fact pleading jurisdiction; a complaint must identify the material issues in the case by succinctly summarizing the material facts underlying the claim. *Sevin v. Kelshaw*, 417 Pa.Super. 1, 611 A.2d 1232 (1992). It is not necessary, however, for a plaintiff to plead the legal theory which defines his cause of action. This determination is left for the trial court. *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (1985).

excluded relevant evidence regarding similar furnaces that were installed in condominium complexes in the vicinity of Dinert's; and (4) two Buyers' claims are barred by *res judicata*. We address each issue below.

At the outset, however, we note our standard of review for civil cases which are heard without a jury:

> It is settled that the findings of a trial judge sitting without a jury must be accorded the same weight and effect on appeal as a jury verdict, and will not be disturbed in the absence of an abuse of discretion or a finding of lack of evidentiary support.... An appellate court, however, is not bound by the trial court's conclusions of law based on its findings of fact.... It is also clear that the party favored by the findings of the trial judge is entitled to have the evidence viewed in the light most favorable to him; that is, all the evidence and proper inferences favorable to him must be taken as true and all unfavorable inferences rejected.... This is particularly true in a case in which the credibility of witnesses must be closely evaluated.

*Amodeo v. Ryan Homes, Inc.*, 407 Pa.Super. 448, 595 A.2d 1232 (1991). We now turn to Dinert's claims.

## I. Implied warranties

Pennsylvania law recognizes an implied warranty of habitability in contracts where builders-vendors sell new homes to residential purchasers. *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972). The implied warranty requires that a builder, typically more skilled and experienced in the construction field than the purchaser, "bear the risk that a home he built will be functional and habitable in accordance with contemporary and community standards." *Id.* at 128, 288 A.2d at 777. Although the implied warranty may be waived by clear and unambiguous contract language, such language must be sufficiently particular to inform the home purchaser of the right he or she is waiving. *Tyus v. Resta*, 328 Pa.Super. 11, 476 A.2d 427 (1984). Furthermore, the contract must always be construed against the builder and in order to exclude warranty coverage for latent defects, "language of

disclaimer must refer to its effect on specifically designated, potential latent defects." *Id.* at 20, 476 A.2d at 432.

When Buyers purchased their individual condominiums, they entered into a purchase agreement which purported to limit their warranty protection:

> *Limitation of Warranties:* Declarant [Dinert] warrants against structural defects in components installed by the Declarant, work done or improvements made by the Declarant, and warrants that the unit and common elements have been inspected for structural and mechanical defects and that any such defects have been found.
>
> Declarant warrants against structural defects in the common element for two (2) years [after the building is conveyed to a bona fide purchaser]. . . .
>
>         *     *     *     *     *     *
>
> These are the only warranties given to the buyer by the Declarant, except for the warranty of title. Declarant disclaims any and all implied warranties of merchantability and fitness for a particular purpose with regard to the unit, personal property contained therein, fixtures contained therein and appurtenances thereto.

Reproduced record, at 48.

Dinert claims that this language was sufficient to disclaim the implied warranty of habitability. He also claims that since the only applicable warranty was the express contract warranty, Buyers' claims are time barred because the lawsuit was filed more than two years after the breach. We disagree.

We held in *Tyus, supra,* that a builder-vendor may not exclude the implied warranty of habitability absent "particular" language which is designed to put the buyer on notice of the rights he is waiving. There is nothing particular about the contract language involved in this case. Indeed, it makes no reference at all to the warranty of "habitability," referring only to the warranties of merchantability and fitness for a particular purpose. Moreover, the warranty provision assuag-

es Buyers to believe that the builders conducted a thorough inspection and made all repairs necessary to render the condominiums perfectly liveable. This is precisely the type of contract language which reinforces our recurrent position that "compared to the ordinary home purchaser, the builder-vender possesses 'superior knowledge and expertise in all aspects of building, including its legal aspects.'" *Tyus*, at 18, 476 A.2d at 431 (quoting *Contractor Industries v. Zerr*, 241 Pa.Super. 92, 106, 359 A.2d 803, 810 (1976) (Cercone, J., dissenting)). We find that Buyers did not waive their right to claim a breach of the implied warranty of habitability by entering into a contract containing the language quoted above.

Relief was properly due all Buyers under the implied warranty of habitability. The defective construction manifested itself in increased amounts of carbon monoxide emissions into two units in 1991. This defect, existent at the time the units were constructed, was not capable of discovery upon a reasonable inspection by a consumer and certainly rendered the units uninhabitable. Moreover, the applicable limitations period did not begin to run until discovery of the defect. *Amodeo, supra.* The instant lawsuits were filed within six months after the defect was discovered; Buyers therefore brought their actions under the implied warranty in a timely fashion.

We note that we are affirming the trial court on grounds other than those relied on below, which is a proper course. *Elder v. Nationwide Insurance Co.*, 410 Pa.Super. 290, 599 A.2d 996 (1991). The trial judge did not rely on the implied warranty of habitability to sustain Buyers' cause of action. Rather, he relied on Pennsylvania's version of the Uniform Condominium Act, 68 Pa.C.S.A. § 3101 *et seq.*, which provides, in pertinent part:

 **(b) General rule.**—A declarant warrants against structural defects in each of the units for two years from the date each is conveyed to a bona fide purchaser, and all of the common elements for two years.

*Id.,* § 3411(b).[2]

"Structural defects" are defined as "those defects in components constituting any unit or common element which reduce the stability or safety of the structure which fall below accepted standards ..." *Id.,* § 3411(a). As the trial court correctly noted, this warranty may not be excluded or modified by agreements between "declarants," such as Dinert, and purchasers of units for residential use, such as Buyers. *Id.,* § 3411(d). Thus, the trial court's finding that the furnaces were constructed below the Code standards (a matter which we will discuss more thoroughly below) reasonably supported its determination that there were "structural defects" for which Dinert is responsible under the UCA, despite the contractual disclaimer language.

Judge Wettick's reliance on the UCA as to all Buyers, however, is somewhat problematic because of a time limitation included in its warranty provisions. Section 3411, although non-excludable by Buyers, must be read in conjunction with subsection (e) which provides that "[n]o action to enforce the warranty created by this section shall be commenced later than six years after the warranty began." *Id.* Thus, since some of the Buyers purchased their units in 1984 and early 1985, their actions regarding the "structural defects" were barred since this action was not brought until mid–1991.[3] Since the provisions of the UCA, however, are meant only to supplement purchasers' remedies otherwise available under general law, 68 Pa.C.S.A. § 3108, Buyers were entitled to

2. We have excluded portions of the warranty provision which refer to the time of commencement of the two-year statutory warranty as to the "common elements" of the condominium. A "common element" is defined as "[a]ll portions of a condominium other than the units." 68 Pa.C.S.A. § 3103. Since the problems here are identified as being attributable to each "unit" as defined by the UCA, *Id.,* we may limit our discussion of the warranty coverage to that of each unit, which runs for two years from the date each Buyer purchased his or her condominium.

3. Judge Wettick's reliance on the UCA is not fatal, however, because Dinert did not argue at trial that the time limitation in § 3411(e) applied to bar the claims of 1984 and 1985 Buyers. Thus, the theory as we have described it was waived. *Fudula v. Keystone Wire & Iron Works,* 283 Pa.Super. 502, 424 A.2d 921 (1982).

recovery under either the UCA or the implied warranty of habitability theory.

Finally, Dinert's argument that the premises were entirely habitable because there were no emissions problems with the furnaces as constructed until 1991 is unpersuasive. A potential hazard, as opposed to one that is apparent, renders a premises no more habitable. To hold otherwise would require unit owners to await disaster before they could make a claim against the builder, a result that would strain logic.

## II. Sufficiency of the evidence

■ Dinert argues next that the trial judge erred in finding that the furnaces were defective as constructed, resulting in a breach of the implied warranty of habitability and the UCA statutory warranty. Dinert argues that undisputed expert testimony establishes that the furnaces, as constructed and after adding grilling, are safe and in compliance with standards promulgated by the Association of Heating, Refrigeration, and Air Conditioning Engineers [ASHRAE], National Fire Prevention Act [NFPA], and the BOCA Code. Furthermore, Dinert places special emphasis on the trial judge's own description of Buyers' burden, which he now claims that they failed to meet:

> The structure is not safe if defects in its components jeopardize the health of occupants. If the plaintiffs can establish that the furnace systems constituted a health hazard to the occupants of their condominiums by falling below accepted health code standards, they will have established a breach of warranty against structural defects.

Trial court memorandum denying Dinert's motion for summary judgment, January 13, 1992. Thus, Dinert argues that since the testimony established that the furnaces he repaired with the grills were safe, Buyers failed to prove that the premises were uninhabitable. We disagree.

First, we reject Dinert's semantic argument regarding the trial court's statement. Under the UCA, Buyers had the burden of proving that the defective condition "reduce[d] the stability or safety of the structure below acceptable standards

..." to establish a breach of warranty. 68 Pa.C.S.A. § 3411(a). Likewise, under the implied warranty of habitability, Buyers are entitled to a home that is "functional and habitable in accordance with local community standards." *Elderkin* at 128, 288 A.2d at 777. Buyers are not required to make a showing of actual "jeopardy" or actual harm, as Dinert contends. Rather, if Buyers proved that their condominium unit was built below acceptable standards, they have proved that their home is *ipso facto* unsafe or uninhabitable. We agree with Buyers that allowing a builder to sell a home or condominium that is "defectively safe" demeans the very purpose of guidelines regulating furnace systems, which are meant to ensure the safety and well-being of a residence's inhabitants against the very harm which occurred in two units.

Second, testimony offered on Buyers' behalf supports the trial court's factual findings. Buyers' expert testified that Equitable, the supplier for Buyers' condominiums, requires heating and ventilation systems to comply with the Code. Under the 1984 Code, the furnaces were inadequately constructed because they lacked sufficient access to combustible air. Thus, Equitable "red-tagged" one of Buyers' furnaces when its employees noted a violation and withheld its services until the defect was satisfactorily resolved. This testimony was not contradicted, despite defense experts' testimony that the units as built were safe and that Equitable does not have final authority regarding which repairs are sufficient to effect compliance with the Code. The trial judge was well within his discretion in finding that because the furnaces did not comply with applicable guidelines, Dinert breached both the statutory warranty against structural defects and the implied warranty of habitability.

Moreover, we agree with the trial court's conclusion that even if Dinert's efforts to repair the furnaces by installing "grills" satisfied the Code provisions,[4] this is relevant only in

---

4. The evidence established that Dinert's repair efforts complied with the 1984 Code, but not the amended 1988 Code. Thus, the question that was left unresolved was whether Dinert's 1991 repairs were governed by the 1984 Code, which was in effect at the time of the original

determining whether Buyers failed to mitigate damages by not accepting Dinert's offer to repair the furnaces. A party who suffers a loss has a duty to make a reasonable attempt to mitigate damages, but the burden is on the party who breaches the contract to show how further loss could have been avoided through the reasonable efforts of the injured party. *Ecksel v. Orleans Construction Co.,* 360 Pa.Super. 119, 519 A.2d 1021 (1987). Since there was no evidence that Equitable accepted Dinert's repairs as satisfactory, Dinert failed to prove that Buyers did not mitigate their damages by accepting his offer. The trial court did not abuse its discretion by awarding the reasonable cost of repairs to Buyers.

### III. Excluded evidence

Dinert contends that the trial court erroneously excluded his testimony that over 1,200 similar condominium units were built with furnace systems identical to Buyers'. He contends that testimony in this regard was relevant to establish community construction standards. We disagree.

It is well-established that the admission and exclusion of evidence is within the sound discretion of the trial judge, and we may not reverse absent an abuse of that discretion. *Majdic v. Cincinnati Machine Co.,* 370 Pa.Super. 611, 537 A.2d 334 (1988), *alloc. denied,* 520 Pa. 594, 552 A.2d 249 (1988). Moreover, evidence is relevant only if it tends to make a fact at issue more or less probable. *Id.* at 338, 537 A.2d at 338 (citing *Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983)). Dinert's proffered evidence simply was not relevant. The manner in which similarly located condominiums were built has no bearing on what construction standards are acceptable

construction, or the 1988 Code, effective at the time of repairs. A defense expert testified that minor repairs are normally governed by the Code that existed when the heating systems were built, but major repairs or renovations were generally covered by the Code applicable at the time of the repairs. Overshadowing all of this, however, is the simple fact that the gas company, Equitable, must be satisfied that the repairs are in compliance with applicable Code provisions lest the units are not supplied with gas. Neither party sought Equitable's determination, thus it was left for the trial judge to determine who bore the burden of seeking Equitable's testimony, which we discuss below.

in the local community. Popularity cannot be equated with propriety. These are two distinct inquiries and the trial judge did not abuse his discretion in excluding Dinert's testimony in this regard.

## IV. Res judicata

Finally, Dinert contends that two of the Buyers' actions should have been barred under the doctrine of *res judicata.* We disagree.

■■■■ Janice and Joseph Lentini and Margie and Herbert Higgonbotham [collectively referred to as "the plaintiffs"] brought separate actions against Dinert in 1987. Both lawsuits claimed that Dinert installed a 50,000 BTU furnace the plaintiffs' respective condominium units rather than a 75,000 BTU furnace as promised under the contract. In order for *res judicata* to bar an action, there must be four concurrent elements: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity in the quality in the persons for and against whom the claim is made. *Melat v. Melat,* 411 Pa.Super. 647, 602 A.2d 380 (1992). The only commonality between the prior suits and this action is the contractual relationship between the plaintiffs and Dinert. In the prior suit, the plaintiffs sought installation of the proper type of furnace. In this suit, they seek damages incurred in repairing a latent defect in their furnace that was discovered in 1991, four years after the prior action. Since the relief sought in the two actions differs entirely, the plaintiffs were not precluded from bringing this action.

Order affirmed.

McEWEN, J., concurred in the result.