## Argeros v. Knock on Wood Construction Company

C.P. of Lehigh County, No. 2011-C-2230.

*Erik J. Conrad*, for plaintiff.
*Joshua A. Gildea*, for defendant.

FORD, *J.*, March 8, 2013—This is a breach of contract case in which plaintiff, William Argeros, claims that defendant, Knock On Wood Construction Company, improperly erected a Trex deck at his residence in violation of the contract that he entered with defendant. Plaintiff claims that shoddy construction was used which resulted in an unsightly and unsafe deck. Plaintiff seeks a return of the $13,550.00 that he paid to defendant for construction of the deck. Plaintiff has proven his contentions at the non-

jury trial which was conducted on November 29, 2012, and January 24, 2013. The evidence demonstrates that the problems with the deck are so pervasive that repairs alone will be insufficient to correct its deficiencies. Because defendant failed to live up to its contractual obligations to plaintiff, it must return plaintiff's money to him. I enter a verdict today with this result. In this opinion, I explain the reasons for the verdict.

## Findings of Fact

1. Plaintiff, William Argeros, lives at 4117 Emerson Lane, Allentown, Lehigh County, Pennsylvania.

2. Defendant, Knock On Wood Construction Company, is a corporation with its principal place of business at 138 North New Street, Nazareth, Northampton County, Pennsylvania. This corporation, owned by Norman Boell, is in the business of building custom decks.

3. On June 8, 2009, plaintiff and defendant entered a written contract (exhibit P-1) by which defendant agreed to provide materials and build a deck for plaintiff at his Emerson Lane residence. The deck was to be a 16 foot by 21 foot Trex deck. Under the contract, plaintiff agreed to pay defendant $13,550.00 for construction of the deck.

4. By the end of August 2009, plaintiff had paid defendant the full $13,550.00 pursuant to the contract. By that date, defendant had constructed a deck which it represented was built in accord with the contract.

5. In the initial period after construction of the deck, there was a cordial relationship between the parties.

Plaintiff thanked Mr. Boell for his efforts by giving him Phillies tickets. However, after plaintiff started to use the deck, he began to notice problems with it. In response to complaints from plaintiff, defendant did additional work on the deck. Defendant did this without additional charge to plaintiff.

6. As time passed, plaintiff detected more problems with the deck. Plaintiff brought some of these issues to the attention of defendant. Defendant offered to come to plaintiff's residence to attempt to correct the problems. However, plaintiff did not respond to defendant's offers. Rather, plaintiff initiated the present suit.

7. When defendant excavated the holes for installation of the support posts and any concrete footings that it may have installed (it is unclear whether concrete footings were installed at the required locations), it left the holes open for one-and-a-half days for inspection by the South Whitehall Township residential building inspector. Defendant did not advise plaintiff nor the inspector that the holes were available for inspection. Defendant then proceeded with further construction oblivious to whether an inspection of the holes and any concrete footings was conducted.

8. The support posts for the deck are not mechanically anchored to any concrete footings. Such attachment would have added stability to the deck.

9. The stair stringers rest on the ground instead of on concrete footings.

10. The support posts for the deck extend into the ground subjecting them to quicker onset of deterioration.

The posts should have been installed on concrete footings that extend above ground level.

11. The girders or beams are not carriage bolted to the support columns. Carriage bolting would provide proper support against vertical and lateral loads. Instead, the girders are attached to the support columns by the random use of nails and screws.

12. Several of the fasteners used on the deck are over-driven which has led to cracking of the wood used on the deck and can lead to further cracking.

13. A deck ledger attaches the deck to a wall of the residence using nails and screws. The ledger was installed outside or over the exterior siding of the house wall. Gray plastic flashing was installed over the top edge of the ledger. However, there was no flashing installed behind the ledger, creating the potential for water leakage.

14. Although the deck ledger is attached to the house wall, the deck utilizes two rows of support posts and girders. This feature suggests that defendant constructed the deck as a free-standing structure. To the extent that defendant designed the deck to be free-standing, the installation of bracing was necessary for stability. This was not done.

15. Joists are attached to the ledger board and rim joists with nails. Joist hangers should have been used to make this aspect of the deck firmer.

16. The stair stringers as attached to the deck are unsafe. Wooden blocking with nails, screws and some lag bolts were used. Proper hanging of the stair stringers required

use of approved adjustable stair hangers. The wooden blocking that was used is unsightly, is of irregular shape and is splitting along its length where the hardware was installed in the blocking.

17. Some of the spindles in the railing system around the deck are spaced more than four inches apart. This creates the possibility of body parts' getting stuck in those rails that are separated by more than four inches.

18. There is side to side movement of the railing with minimum pressure. This creates a hazard of falling through the railing for anyone who may lean against it with considerable pressure.

19. Some of the Trex boards used on the deck are light-colored while others are dark-colored. Each board is fastened to the deck with center screws. According to Trex specifications, the boards should have been attached to the deck with screws placed in each joist in a zigzag pattern. This recommended configuration prevents the boards from rocking.

20. The two gates to the two sets of stairs leading from the deck cannot be completely closed due to the uneven and imprecise construction of the deck railing system.

21. When one stands on the deck, that individual feels an unsteadiness to the structure.

22. The completed deck did not pass inspection by the South Whitehall Township building inspector because of the existence of violations of the construction code adopted by the township. Violations found by the inspector

stemmed from certain deficiencies noted above, separately or in various combinations. The inspector posted a notice on the deck forbidding use of it.

23. The deck is unsafe for its intended use and is unsightly at various locations.

24. The unsafe conditions on the deck and the poor workmanship of it are pervasive. The additional remedial work suggested by defendant is insufficient. Only demolition of this deck and construction of a new deck can provide plaintiff with the deck for which he contracted with defendant.

## Discussion and Conclusions of Law

In count I of the complaint, plaintiff contends that defendant breached the contract entered by the parties by constructing a defective deck at plaintiff's residence. "[F] or a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002).

The evidence demonstrates that plaintiff contracted with defendant for construction of a deck which conformed to Trex specifications. In every construction contract such as this, the builder gives an implied warranty that it will do the work in a skillful, careful and workmanlike manner and that the structure will be reasonably suitable for its purpose. *See Metropolitan Edison Company v. United Engineers & Constructors, Inc.*, 4 Pa.D.&C.3d 473

(C.P. Philadelphia 1977); and *Pontiere v. James Dinert, Inc.*, 426 Pa. Super. 576, 627 A.2d 1204 (1993). Instead, plaintiff received, for the $13,550.00 that he paid, a deck that is unsafe and unsightly. It did not pass muster with the South Whitehall Township building inspector who found it unstable and in violation of its code. The failure to construct a structurally sound deck amounts to a failure of consideration by defendant and constitutes a breach by defendant of the parties' contract.

I made a site visit to plaintiff's home on December 12, 2012. I inspected under the deck, climbed the steps and walked on the deck. Lay person that I am, it was apparent that many parts of this deck were assembled without proper workmanship. There was a lack of precision in the placement of nails, screws and bolts. The size of bracing was not uniform. The placement of beams on posts was not precise and uniform. Particularly unsightly was the irregular wood blocking which was cracked or split at spots. When I walked under the deck and looked up at its underside, I observed the use of a patchwork of construction materials. The workmanship lacked the exactness that a reasonable person would expect from a corporation holding itself out as skilled in constructing decks.

Most importantly, the deck is unsound. In an effort at stability for the stairs to the deck, defendant relied on non-uniform wood blocks that are cracked because of the metal hardware placed in them. The railings around the deck sway with any substantial force placed upon them. When one stands on the deck itself, its unsteadiness can be felt. The gates to the two sets of stairs leading from the

deck cannot be closed because of the poor construction of the railings.

In sum, the problems with the deck are pervasive and fundamental. The proposal made by defendant to correct given areas on the deck is insufficient to give plaintiff the benefit of his bargain with defendant. Thus, plaintiff is entitled to receive from defendant a return of the money he paid.

Among the defenses offered by defendant is that plaintiff has failed to maintain the deck for the three years that this dispute has existed. Since plaintiff was barred from use of the deck by the South Whitehall Township inspector on November 24, 2010, it is true that there has been no use or maintenance of it. The deck has been exposed to the elements over those years. However, deficiencies in the deck include significant structural problems which originated from poor workmanship, not exposure to the elements. More patchwork will not give plaintiff the deck about which the parties contracted. Additionally, it is no defense that plaintiff initially paid for the work of defendant prior to discovering its deficient nature. *See Fannin v. Cratty*, 331 Pa. Super. 326, 480 A.2d 1056 (1984) (involving a breach of contract action premised on the discovery of latent defects).

In count II of the complaint, plaintiff asserts a claim of unjust enrichment. However, because a written contract exists between the parties, plaintiff cannot succeed on his claim for unjust enrichment. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

Finally, in count III of the complaint, plaintiff alleges that defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1 — 201-9.3, by representing, among other things, that it would construct the deck according to Trex specifications. Under the statute, plaintiff seeks a return of the $13,550.00 he paid to defendant as well as treble damages and attorney's fees for bringing this suit. While plaintiff is entitled to a return of the $13,550.00, the award of treble damages and attorney's fees under the UTPCPL is discretionary with the court. 73 P.S. § 201-9.2. An award of treble damages under the UTPCPL is appropriate where there is a showing of "intentional or reckless, wrongful conduct." *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007). Because defendant was careless and nothing more and because plaintiff made it clear that he really only seeks a return of his money, plaintiff is made whole through his contract action without any additional relief under the UTPCPL.