J-A14004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CORA RIGANTE AND ADAM S. ROTH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROCKFORD HOMES, LLC | : | No. 1078 MDA 2021 |

Appeal from the Judgment Entered August 4, 2021
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-19-02592

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED JULY 22, 2022**

Cora Rigante ("Rigante") and Adam S. Roth ("Roth") (collectively "Appellants") appeal from the August 4, 2021 judgment entered in the Court of Common Pleas of Lancaster County, in favor of Rockford Homes, LLC ("Rockford"), after the trial court's partial granting of Rockford's motion for judgment on the pleadings and the parties' resolution of the remaining claim by joint stipulation.  After careful review, we affirm.

The trial court provided the following summary of relevant facts and procedural history in this matter:

> On May 23, 2015, Roth entered into a real estate agreement …
> with Rockford, a builder-vendor, for the sale of a newly
> constructed home ("Property").[1]  Although Roth was married to

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** Rockford's Motion for Judgment on the Pleadings, 7/23/20, at Exhibit A (Standard Agreement for the Sale of Real Estate) ("Agreement").

Rigante at the time he executed the Agreement, Rigante was not a party to the Agreement and is not listed on the deed that Rockford subsequently delivered to Roth.

[Appellants] allege that approximately two months after they moved into the Property, Rigante began to experience "various symptoms such as cluster headaches, congestion, burning skin and trouble breathing due to chest pain."  Although [Appellants] do not allege that, at any time, they had the Property tested for radon, [Appellants] aver that the "area where the home was constructed had a high percentage of homes that had high exposure to radon" and that Rigante has experienced and will continue to experience pain and suffering because of her purported exposure to high levels of radon.

The Agreement between Roth and Rockford expressly addresses the issue of radon.  Under the article titled "BUYER'S DUE DILIGENCE/INSPECTIONS," the Agreement provides:

> RADON: Buyer may obtain a radon test of the Property from a certified inspector.  The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L).  Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium.  Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer.  Radon can find its way into any air-space and can permeate a structure.  If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry.  Any person who tests, mitigates[,] or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection.

[Agreement at ¶ 12.]  Roth expressly waived the right to inspect for radon by signing his initials under the "waived" column.  The Agreement further states:

> RELEASE: Roth releases … and forever discharges Rockford … from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from … radon … or indoor air quality, environmental hazards … or any defects or conditions on the Property.

[*Id.* at ¶ 28.]  Finally, the Agreement establishes that:

> All representations … of any kind made by Rockford … are not a part of this Agreement unless expressly incorporated or stated in this Agreement.  This Agreement contains the whole agreement between Roth and Rockford, and there are no other terms, obligations, covenants, representations, statement[s] or conditions[,] oral or otherwise, of any kind whatsoever concerning this sale. …  Unless otherwise stated in this Agreement, Roth has inspected the property … before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION….  Roth acknowledges that Brokers, their licensees, employees, officers[,] or partners have not made an independent examination or determination of the … environmental conditions … nor of conditions existing in the locale where the [P]roperty is situated.

[*Id.* at ¶ 25(A), (B).]

The three-count complaint presently before this court is premised on [Appellants'] contention that Rockford had knowledge that the "area" in which the house is located "produced high levels of radon," that Rockford nonetheless installed only a "passive radon system without a fan," that Rockford represented that "everything was … in good order in the home," and that, consequently, Rockford created "an illusion … that any radon gas was being vented from the property."  Specifically, [Appellants] allege that: (1) Rockford breached the implied warranty of habitability by providing an uninhabitable home; (2) Rockford negligently misrepresented that the Property was safe and habitable by failing to disclose that homes in the area were subject to high levels of radon; and (3) that Rockford violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law [(UTPCPL), 73 P.S. §§ 201-1 - 201-10,] by making willful and knowing misrepresentations to induce [Appellants] to contract for the sale of the Property.  On July 23, 2020, Rockford moved for judgment on the pleadings on all of [Appellants'] claims.

Trial Court Opinion ("TCO"), 1/21/21, at 1-4 (citations to record, unnecessary capitalization, and some brackets omitted).

After oral argument on Rockford's motion for judgment on the pleadings, which was held on October 4, 2020, the trial court directed the parties to submit supplemental briefs as to: 1) whether Rigante had standing to bring the asserted claims against Rockford; and 2) whether Appellants had waived their right to bring a breach of implied warranty of habitability claim against Rockford. The parties complied. On January 21, 2021, the trial court issued an opinion and order in which it granted Rockford's motion as to Rigante, dismissed all Rigante's claims, and granted in part and denied in part the motion as to Roth. Specifically, the trial court granted the motion as to Roth's negligent misrepresentation (Count II) and UTPCPL (Count III) claims and dismissed those counts accordingly. The trial court denied Rockford's motion as it related to Roth's breach of implied warranty (Count I) claim. **See** Trial Court Order, 1/21/21 (single page). The parties subsequently entered into a joint stipulation to resolve the remaining breach of implied warranty claim (Roth's Count I) against Rockford. **See** Joint Stipulation, 7/1/21 (single page). On August 4, 2021, the trial court issued an order for entry of final judgment against Roth and in favor of Rockford, in accordance with the stipulation. **See** Trial Court Order, 8/4/21 (single page).[2]

_____

[2] The trial court's order further stated: "This entry of judgment is a final judgment that disposes of the entire lawsuit, and any appeal deadlines commence from the date of this final judgment's entry on the court docket." **Id. See** Pa.R.A.P. 341(b)(1) (defining a final order as, *inter alia*, any order that disposes of all claims and all parties).

- 4 -

On August 16, 2021, Appellants filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 16, 2021, the trial court issued a statement, in which it adopted its January 21, 2021 opinion and order as its Rule 1925(a) opinion. Herein, Appellants present the following issues for our review:

A. Was the trial court correct to grant … [Rockford's] motion for judgment on the pleadings as to Rigante's claims in Counts I-III of the complaint for her purported lack of standing in that she did not sign and was not a party to the real estate sales contract, when case law from this Court and the Pennsylvania Supreme Court has found standing in similar if not identical circumstances?

B. Was the trial court correct to hold that standard, pre-printed language in the real estate sales contract, a pre-printed form used universally for residential real estate sales in Pennsylvania, bars both Appellants' claims because of language purportedly releasing [Rockford] … from liability for radon-related injuries or because of an integration clause found in that same standard, universally used contract?

Appellants' Brief at 4 (unnecessary capitalization omitted).[3]

---

[3] While we recognize that Appellants' claims relate to the trial court's January 21, 2021 order, we note that this appeal properly lies from the trial court's August 4, 2021 order. As indicated *supra*, the August 4, 2021 order reduced the parties' joint stipulation regarding the sole remaining claim to judgment and, thus, constituted a final order. **See** Pa.R.A.P. 341(b)(1). Consequently, the trial court's January 21, 2021 interlocutory order merged into the August 4, 2021 final order and is now reviewable. **See Commonwealth v. Fulmore**, 25 A.3d 340, 345 (Pa. Super. 2011) (stating that "the merger rule merges into a final judgment all prior non-final orders for purposes of appellate review"); **Quinn v. Bupp**, 955 A.2d 1014, 1020 (Pa. Super. 2008) ("[I]nterlocutory orders that are not subject to immediate appeal as of right … become reviewable on appeal upon the trial court's entry of a final order.") (citations and brackets omitted).

We review Appellants' claims mindful of the following well-settled principles:

> The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Tucker v. Philadelphia Daily News*, … 848 A.2d 113, 131 ([Pa.] 2004) (citation and internal quotation marks omitted).

> Entry of judgment on the pleadings is permitted under Pa.R.C[iv].P. 1034[,] which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there [were] facts disclosed by the pleadings which should properly go to the jury.

*Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 538 (Pa. Super. 1998) (citations omitted). Likewise,

> [o]ur scope and standard of review in appeals of a grant or denial of a motion for judgment on the pleadings is well-settled. This Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. We review to determine whether the trial court's action respecting the motion for judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. We will affirm the grant of judgment on the pleadings only if the moving party's right to succeed is certain and the case is so

> free from doubt that trial would clearly be a fruitless exercise.
>
> ***Municipality of Mt. Lebanon v. Reliance Ins. Co.***, 778 A.2d 1228, 1231 (Pa. Super. 2001) (citations and quotation marks omitted).

***Donaldson v. Davidson Bros., Inc.***, 144 A.3d 93, 100-01 (Pa. Super. 2016).

Here, Appellants claim the trial court erred in ruling that Rigante lacked standing to bring any of her claims against Rockford, because she was not a party to the Agreement. Appellants' Brief at 8. With respect to her breach of implied warranty of habitability claim, Appellants aver that the right to bring such a claim does not arise from a contract. Rather, they assert that the implied warranty is operational by law and that it applies even in the complete absence of a contract. ***Id.*** at 10 (citing ***Tyus v. Resta***, 476 A.2d 427 (Pa. Super. 1984); ***Elderkin v. Gaster***, 288 A.2d 771 (Pa. 1972)). As a purported "interested party who was known to Rockford[,]" they argue that Rigante's claim for breach of the implied warranty of habitability was valid. ***Id.*** Similarly, Appellants assert that one does not need to sign a contract to avail herself of the protections of the UTPCPL, as the UTPCPL is applicable not only to a purchaser, but also to a "foreseeable user." ***Id.*** at 10-11 (citing ***Johnson v. MetLife Bank***, 883 F.Supp.2d 542 (E.D.Pa. 2012)).[4] They state that

---

[4] "While we recognize that federal district court cases are not binding on this [C]ourt, Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find them persuasive." ***Umbelina v. Adams***, 34 A.3d 151, 159 n.2 (Pa .Super. 2011) (citations omitted).

Rigante was a foreseeable user of the Property because she is married to Roth and lives with him. *Id.* at 11.

Additionally, Appellants aver that Rigante stated a valid claim for negligent misrepresentation. *Id.* They allege that deception can be effected by action or inaction, and that "Rockford knew or had reason to know of the radon problems in the house it had built for [Appellants, yet it] failed to disclose those problems." *Id.* They further aver that a spouse who intends to live in a new home is just as vulnerable to negligent misrepresentation as is the spouse who actually signed the contract. Instantly, they claim "it is [] Rigante who suffered the debilitating effects of the radon present in the house, a house that Rockford knew she was going to occupy." *Id.* Appellants conclude that the absence of Rigante's signature on the Agreement "is a legally insignificant fact." *Id.* No relief is due on this claim.

First, as the trial court so aptly explained with respect to Appellants' breach of implied warranty claim:

> An implied warranty of habitability ("Warranty") exists in every contract for the sale of a new home from a builder-vendor to a residential purchaser. *Pontiere v. James Dinert, Inc.*, 627 A.2d 1204, 1206 (Pa. Super. 1993) (citing *Elderkin*[, *supra*]). This well-settled principle gives rise to the equally well-established rule that "an action for breach of the [Warranty] *requires contractual privity between the parties*." *Conway v. Cutler Group, Inc.*, 99 A.3d 67, 73 (Pa. 2014).[5] The Warranty's

---

[5] In the case *sub judice*, Appellants' reliance on *Tyus*, *supra*, and *Elderkin*, *supra*, in support of their position that Rigante had standing to bring a breach of Warranty claim, as the implied warranty of habitability applies even in the
*(Footnote Continued Next Page)*

mooring to contractual privity is further evidenced by the limitation on the type of damages that can be sought under a[] breach of Warranty theory: "a breach of the implied warranty of habitability represents a contract claim for which only contract remedies are available and not a tort claim for which personal injury damages are available." ***Echeverria v. Holley***, 142 A.3d 29, 35 (Pa. Super. 2016); ***see also Gadbois v. Leb-Co. Builders, Inc.***, 458 A.2d 555, 557 (Pa. Super. 1987) (noting that the proper measure of damages "in cases where a homeowner sues for defective construction," including in a breach of Warranty case, is generally "the difference between the market value of the house as contracted and the market value that the house would have had if constructed as promised")….

[Appellants] admit that Roth was the sole purchaser of the Property and that Rigante has no contractual privity with Rockford.[6] Rigante consequently lacks any basis to recover the contract damages—specifically, the cost of repairs occasioned by Rockford's purported breach—that are available under a breach of Warranty theory. The [c]omplaint makes it clear that Rigante is instead seeking personal injury damages even though, as noted above, personal injury damages cannot be recovered under a breach of Warranty theory. For these reasons, Rigante is an improper party to assert a breach of Warranty claim against Rockford….

---

complete absence of a contract, is misplaced. **See** Appellants' Brief at 10. In **Elderkin**, the Court acknowledged an implied warranty of habitability in contracts whereby builder-vendors sold newly constructed houses. **Elderkin**, 288 A.2d at 777. Subsequently, in **Tyus**, we considered whether the implied warranty can be limited or disclaimed by builder-vendors selling new homes. **Tyus**, 476 A.2d at 431-32. In each of these cases, the parties had entered into a contract for the purchase of a new home, and neither case discussed the issue of standing. **See also Conway**, 99 A.3d at 70 (emphasizing that the holding in **Elderkin** "was rooted in the existence of a contract—an agreement of sale—between the builder-vendor of a residence and the purchaser-resident").

[6] **See** Appellants' Answer to Motion for Judgment on the Pleadings, 8/21/20, at 1 ¶¶ 2-3.

TCO at 5-7 (emphasis added; citations to record omitted).  We agree.  Hence, we conclude that the trial court properly granted judgment on the pleadings with respect to Rigante's breach of Warranty claim.  *Id.* at 7.

Regarding Appellants' UTPCPL claim, the trial court opined:

Pennsylvania's [UTPCPL] "seeks to prevent 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  *Bennnett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. 2012) (quoting 73 P.S. § 201-3).  The UTPCPL provides a private right of action for "[a]ny person who purchases … goods … primarily for personal, family or household purposes and thereby suffers any ascertainable loss" from unlawful trade practices.  73 P.S. § 201-9.2(a).

The statutory language is clear: [T]o have standing to bring a UTPCPL claim, the plaintiff must be a *purchaser*.  *Id.*  Although "strict" or "direct technical privity" of contract between the plaintiff and defendant is not required to assert a UTPCPL claim, the defendant must have specifically intended the plaintiff to rely on its fraudulent conduct or must have specifically foreseen the plaintiff's reasonable reliance on such conduct.  *Valley Forge Towers S. Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 647 (Pa. Super. 1990).  Functionally, therefore, the plaintiff must, at a minimum, have had commercial dealings with the defendant.  *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 57 (3d. Cir. 1992);[7] *Johnson v. MetLife Bank, N.A.*, 883 F.Supp. 2d 542, 547-48 (E.D. Pa. 2012).

Instantly, [Appellants] frame Rigante as an "interested party who was known to Rockford" and who was a "foreseeable user" of the home.  Both assertions are irrelevant to the standing rules set forth above[.  I]nstead, the record is clear that Rigante neither purchased anything from nor had any commercial dealings with Rockford.  Rigante has, therefore, failed to plausibly argue that Rockford specifically intended her to rely on its purportedly

---

[7] *See Katz*, 972 F.2d at 57 (noting that "although strict privity is not always an element of the private cause of action," standing does not extend to "a plaintiff lacking any commercial dealings with the defendant").

fraudulent conduct or that Rockford specifically foresaw her reliance on its allegedly fraudulent conduct.

*Id.* at 13-14 (emphasis in original). Moreover, we note that Appellants' reliance on ***Johnson v. MetLife Bank, N.A.***, ***supra***, ignores the fact that the plaintiff in that case purported to be heavily involved in the transaction with MetLife and averred that he was led to believe he was a borrower on the loan. ***Johnson***, 883 F.Supp.2d at 547. **See also id.** at 548 (noting that where no direct privity exists, the plaintiff can establish standing by putting forth evidence that he had commercial dealings with the defendant, that the defendant misled him during those commercial dealings knowing that he might rely on the misrepresentations, and that he ultimately made a purchase as a result of the misrepresentations). The pleadings in the instant matter contain no such allegations, and Appellants have failed to provide any evidence to establish that Rigante was involved in commercial dealings with Rockford. Hence, we agree with the trial court that Rigante lacked standing under the UTPCPL.

As to Appellants' negligent misrepresentation claim, the trial court opined:

> A common law negligent misrepresentation claim "requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to another party **acting** in justifiable reliance on the misrepresentation." **Bortz v.** [**N**]**oon**, 729 A.2d 555, 561 (Pa. 1999) (emphasis supplied). It is axiomatic that to bring a viable negligent misrepresentation claim, Rigante must aver that she personally acted in reliance on the alleged misrepresentation. However, the record is clear that Roth **alone**

purchased the Property from Rockford. Rigante fails to allege that she took any legally cognizable action in reliance upon Rockford's alleged misrepresentations.

TCO at 9-10 (emphasis in original). Thus, we agree that Rigante's negligent misrepresentation claim against Rockford "plainly fails." *Id.* at 10. Based on the foregoing, we determine that the trial court properly dismissed all of Rigante's claims due to lack of standing.

In their second claim, Appellants aver that the trial court erred in determining their claims were barred by language in the Agreement—namely, the language releasing Rockford from liability for radon-related injuries and the integration clause. Appellants' Brief at 8-9. They argue that such language is "legally irrelevant[,]" based once again on the faulty premise that the implied warranty of habitability does not arise from a contract. *Id.* at 12. Additionally, Appellants assert that the viability of their breach of Warranty claim depends on whether the defect at issue was readily visible to them at the pre-purchase phase. *Id.* at 8. They state that "if the defects in the home cannot be detected by reasonable inspection, those defects are considered latent, bringing the implied warranty of habitability … into play…. [L]atent defects render release language and integration language unenforceable." *Id.* at 13. Appellants note that the issue in the present matter is radon, asserting that radon is "[o]bviously … not visible" and that one cannot detect an unhealthy concentration of radon by reasonable inspection. *Id.* Thus, they conclude that Rockford's motion for judgment on the pleadings should have been denied. *Id.*

First, given our disposition on the trial court's dismissal of Rigante's claims, we need not address this issue as it relates to Rigante. *See Orfield v. Weindel*, 52 A.3d 275, 277 (Pa. Super. 2012) ("Our courts cannot decide moot or abstract questions….") (internal quotation marks and citation omitted). Therefore, we consider Appellants' claim only as it relates to the causes of action raised by Roth.

Next, we observe that Appellants' argument focuses solely on the trial court's determination that their **breach of Warranty claim** was barred by the release language and integration clause in the Agreement and contains no mention of the trial court's decision as it relates to Roth's negligent misrepresentation and UTPCPL claims. This is puzzling, as **the trial court denied Rockford's motion for judgment on the pleadings as to Roth's breach of Warranty claim**. It is Roth's negligent misrepresentation and UTPCPL claims that were dismissed by the trial court and should therefore be the subject of their argument on appeal. Notwithstanding, Appellants aver that the trial court's interpretation of the radon release and integration clause led it to dismiss Roth's breach of Warranty claim. Appellants' Brief at 8. This is a bald, misstatement of fact. In fact, the record reflects that the trial court agreed with Appellants and construed radon, for the purposes of deciding the motion for judgment on the pleadings, as a "latent defect that falls within the ambit of the implied warranty's protections." TCO at 7 n.2. Accordingly, the trial court determined that Roth's breach of Warranty claim would survive judgment on the pleadings. Hence, we deem this claim as it relates to Roth's

breach of Warranty claim to be moot. ***See Orfield***, 52 A.3d at 277 ("Our courts cannot decide moot or abstract questions….") (internal quotation marks and citation omitted).

To the extent that Appellants' second issue implies the trial court erred in concluding that the Agreement barred Roth's negligent misrepresentation and UTPCPL claims, we deem this claim waived due to Appellants' failure to develop their argument. ***See Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority."); Pa.R.A.P. 2119(a). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted). Instantly, Roth does not explain how the trial court erred in determining that these two claims were barred by the release language and/or the integration clause in the Agreement. In fact, Roth does not even mention either of these causes of action in the argument section of his brief, and we decline to craft the argument for him. ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014).

Nonetheless, even if the second issue as it pertains to Roth's Counts II and III had not been waived, we would conclude that Appellants' argument is meritless. As the trial court opined:

To recover under a negligent misrepresentation theory, Roth must be able to show, *inter alia*, that he justifiably relied on Rockford's purported misrepresentations. [**Bortz**, 729 A.2d at 561.] Well-settled Pennsylvania precedent clearly establishes, however, that to the extent Roth relied upon any representations made by Rockford, his reliance was unjustifiable such that no recovery on a negligent misrepresentation claim is possible.

Pennsylvania's growing body of "real estate inspection" jurisprudence governs matters that, like the instant action, involve residential buyers who sign integrated real estate agreements and later allege that the sellers made oral representations about the property that "proved to be untrue." ***1726 Cherry Street Partnership by 1726 Cherry Street Corp. v. Bell Atlantic Properties, Inc.***, 653 A.2d 663, 670 n.6 (Pa. Super. 1995). These cases call for a "somewhat different approach" to a strict application of the [p]arol [e]vidence [r]ule and abandon blind adherence to the maxim that "a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." ***1726 Cherry Street***, 653 A.2d at 670 n.6; ***Blumenstock v. Gibson***, 811 A.2d 1029, 1036 (Pa. Super. 2002).[5] Instead, the relevant rule governing the admissibility of alleged pre-contractual representations—and thus defining the ultimate viability of a misrepresentation claim—is as follows: in a "real estate inspection" case, the court must

> balance the extent of the residential purchaser's knowledge of objectionable conditions derived from a reasonable inspection against the extent of coverage of the contract's integration clause in order to determine whether the residential purchaser could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause.

***LeDonne v. Kessler***, 389 A.2d 1123, 1130 (Pa. Super. 1978).

[5] The Superior Court has indicated that this "somewhat different approach" was "crafted because the court realizes that … unsophisticated buyers of residential real estate[] are pragmatically incapable of fully ascertaining the physical condition of the property they are buying" such that the court has refused to strictly enforce the parol evidence rule. ***1726 Cherry Street***…, 653 A.2d [at] 670 n.6….

- 15 -

[We] can imagine a case where the facts relevant to making a determination of "justifiable reliance" are simply too close to call at the judgment on the pleadings stage. That case, however, is not presently before [the court]. The Agreement plainly disclosed that radon can find its way into any air-space and can permeate a structure[;] it allowed Roth to inspect the Property for its presence[;] and it permitted Roth to terminate the Agreement if the inspection yielded problematic results. There is no dispute that Roth was fully knowledgeable about the potential existence of radon in the Property and that he chose to waive the right to confirm or deny its existence by performing a radon test.

Further, the Agreement contains a release of all claims provision specifically discharging Rockford from any liability for radon-related personal injury or property damage and sets forth a comprehensive integration clause that makes it patently clear that: the Agreement contains the entire agreement between Roth and Rockford; Roth inspected the [P]roperty or waived his right to do so; Roth purchased the Property in its present condition; and Roth acknowledged that no party made an independent examination of the environmental conditions or conditions in the locale where the Property is situated.

The "real estate inspection" cases seek to offer heightened protection to residential purchasers who "simply could not entirely protect themselves from the harm they eventually suffer." *1726 Cherry Street*, 653 A.2d at 670 n.6. The cases do **not** excuse residential purchasers from being held to "the reasonable meaning of their … words" or allow residential purchasers to seek relief that would "render the words of the contract meaningless." *Lenihan v. Howe*, 674 A.2d 273, 276 (Pa. Super. 1996). Balancing the applicable factors, the law states with certainty that Roth did not reasonably rely on any purported radon-related misrepresentation of Rockford and that Roth cannot recover under a negligent misrepresentation theory.

TCO at 10-12 (some brackets omitted; emphasis in original).

Regarding Roth's UTPCPL claim, the trial court opined:

"Justifiable reliance is an element of all private claims under the UTPCPL." *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1287 (Pa. Super. 2015). Accordingly, a plaintiff asserting a private action under the UTPCPL must show that "he justifiably relied on the defendant's wrongful conduct or representation and

- 16 -

that he suffered harm because of the reliance." ***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 438 (Pa. 2004). As fully analyzed above, the law is clear that Roth cannot prove that he justifiably relied upon any pre-contractual representations made by Rockford. Roth cannot, therefore, recover on his UTPCPL claim….

TCO at 14. We would discern no error of law in the trial court's decision to grant judgment on the pleadings regarding Roth's Counts II and III.

In conclusion, we affirm the trial court's January 21, 2021 order, granting Rockford's motion for judgment on the pleadings as to Rigante and granting in part and denying in part Rockford's motion for judgment on the pleadings as to Roth. Additionally, we affirm the judgment entered on August 4, 2021, in favor of Rockford.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>07/22/2022</u>